ANNETTE ZOCH, PLAINTIFF-RESPONDENT, v. METRO-
POLITAN LIFE INSURANCE COMPANY, A BODY COR-
PORATE, DEFENDANT-APPELLANT.

Submitted May 15, 1936—Decided November 10, 1936.

Before Justices BODINE and HEHER.

For the appellant, *Perkins, Drewen & Nugent* (*Randolph
Perkins* and *John Drewen,* of counsel).

For the respondent, *Chandless, Weller & Selser* (*John E.
Selser* and *Julius E. Kramer,* of counsel).

HEHER, J.  Plaintiff, as the appointed beneficiary, sues
upon a policy of insurance issued by the defendant corpora-
tion upon the life of her mother, Mary Wiworski, who died

on May 1st 1934, a victim of gastric carcinoma. The application for the policy was made in writing on February 21st, 1934; and the defense interposed was that the insured, in answer to inquiries therein contained respecting the state of her health, previous physical infirmities and illnesses, and ministrations of physicians, made "material and fraudulent representations," and, with intent to defraud, failed to disclose "that between the time of the making of said application and the delivery of said policy she suffered with cancer of the stomach, had been attended by one or more physicians for said disease and that she had been admitted to a hospital." The policy was executed on February 28th, 1934; and it is therein declared that this "is the date of [its] issue." But it was not delivered until March 9th, 1934. And the application contained a provision that "the company shall incur no liability" thereunder "until it has been received, approved, and a policy issued and *delivered,* and the full first premium stipulated in the policy has actually been paid to and accepted by the company during the lifetime of the applicant, in which case such policy shall be deemed to have taken effect as of the date of issue as recited" in the policy. The application was, by express agreement, made a part of the policy. It is said that the statements thus made in the questionnaire constituted "continuing representations" and "must be true at the time the purpose for which they were made is effected (*i. e.*), the time of delivery of the policy."

The District Court judge, sitting without a jury, rendered judgment for the plaintiff, and defendant's insistence is that, for the reasons to be presently stated, it was entitled to judgment as a matter of law. It is also urged that there was error in permitting "lay witnesses to testify to the apparent good health of the assured prior to the making of the application."

*First:* There was a lack of definitive evidence that, at the time of the making of the representations contained in the questionnaire, the insured was conscious of ill health. While it is certain that the onset of the fatal disease antedated the application for insurance, it was nevertheless a question of fact whether there had been a manifestation to the insured of

the symptoms of physical infirmity or illness at the time the representations were made. The insurer's physician, who subjected her to a physical examination, found no disqualifying ailment or symptoms of disease. Her appearance indicated good health. And the evidence warrants a finding that she was first stricken during the first week of the ensuing month of March. Of this more hereafter.

Nor does it conclusively appear that she had been attended by a physician shortly before the making of the application. This physician, Dr. Gutowski, was unable to fix definitely the time of his attendance. He had made no record of it. He said his call was "about the middle" of the month of February, 1934, at the home of the assured in the city of Perth Amboy, "about two weeks before" Dr. Urbanski made his examination. But he did not again visit the insured; and how he acquired knowledge of the time of Dr. Urbanski's examination is not made to appear. He found her "sick in bed" and "emaciated." Yet from the twenty-first to the twenty-fifth of that month she was at the home of her daughter in Hackensack, and while there was examined by the insurer's physician, Dr. Farmer, who said she weighed about one hundred and sixty pounds and "looked very healthy." Thus it was fairly inferable from all the facts and circumstances that Dr. Gutowski's attendance on the assured was subsequent to Dr. Urbanski's first call. And the evidence, as will be hereafter pointed out, furnishes the basis for the conclusion that the latter did not attend the assured until March 7th. The proofs did not establish that another physician, Dr. Lund, had been in attendance before that date.

*Second:* Assuming for present purposes that these were "continuing" representations, and that in virtue thereof the insured was under a duty to communicate a subsequent change of condition to the insurer before delivery of the policy (see *Stipcich* v. *Metropolitan Life Insurance Co.,* 277 *U. S.* 311; 48 *S. Ct.* 512; 72 *L. Ed.* 895), a breach of that duty does not conclusively appear. Whatever may be the rule in other jurisdictions, it is settled in this state that misrepresentation or concealment, to avoid the policy, must be both material and fraudulent. *Kozlowski* v. *Pavonia Fire Insur-*

*ance Co.*, 116 *N. J. L.* 194; *Clayton* v. *General, &c., Assurance Corp.*, 104 *Id.* 364; *Hudson Casualty Insurance Co.* v. *Garfinkel*, 111 *N. J. Eq.* 70; *Kerpchak* v. *John Hancock Mutual Life Insurance Co.*, 97 *N. J. L.* 196; *Prahm* v. *Prudential Insurance Co.*, 97 *Id.* 206; *Metropolitan Life Insurance Co.* v. *McTague*, 49 *Id.* 587; *Guarraia* v. *Metropolitan Life Insurance Co.*, 90 *Id.* 682; *Duff* v. *Prudential Insurance Co.*, 90 *Id.* 646; *Brunjes* v. *Metropolitan Life Insurance Co.*, 91 *Id.* 296; *McAuliffe* v. *Metropolitan Life Insurance Co.*, 93 *Id.* 189; *Anders* v. *Supreme Lodge Knights of Honor*, 51 *Id.* 175. Here neither sound health at the time of the delivery of the policy, nor the same state of health as existed at the time of the making of the application, nor the non-attendance of a physician subsequent thereto, was made a condition precedent to the inception of the contract, in which event the validity of the policy would depend alone upon the existence of the stipulated fact, and not upon the knowledge of the insured and concealment by him with fraudulent intent. *Prahm* v. *Prudential Insurance Co.*, 98 *Id.* 335; *affirmed*, 99 *Id.* 288; *Levandoski* v. *Equitable Life Assurance Society*, 103 *Id.* 643.

So tested, the proofs, in the aspect most favorable to appellant, presented at least an issue of fact as to whether there was a fraudulent withholding of matters of fact affecting the risk which the assured was under a duty to communicate to the insurer before the delivery of the policy. While Dr. Urbanski testified that his first attendance on assured was "approximately on March 1st, 1934," he certified under oath in the proofs of death that he was "first consulted by deceased for the condition" which caused death on March 7th, 1934, and that this was the "date of first visit in last illness." He also testified that, at his direction, she was conveyed to the local hospital on March 7th, 1934, "for observation and clinical study," and was discharged on the ensuing March 11th, when, following the taking of X-ray photographs, he diagnosed her condition as gastric carcinoma, although he did not communicate this conclusion to the insured. This, it will be observed, was subsequent to the actual delivery of the policy.

Moral or conscious fraud by the insured did not indisput-

ably appear. Whether she was sensible of a material change in health intervening the application and the delivery of the policy was a question for the trier of the facts. And whether the non-disclosure of the intervenient medical attendance constituted a false representation, knowingly made with intent to deceive, in relation to an illness affecting the risk was likewise one of fact under the circumstances. Cases dealing with like interrogatories have so held. *Shapiro* v. *Metropolitan Life Insurance Co.*, 114 *N. J. Eq.* 378; *Clayton* v. *General, &c., Assurance Corp., supra.* The inquiries relating to the attendance of a physician (as amplified by the subjoined demand for particulars) and "treatment" at a dispensary, hospital or sanitorium, were plainly designed to elicit information of "sickness" affecting the general health or probable continuance of life, or impairing the constitution, as distinguished from an indisposition in its nature merely "transitory or temporary;" and fraudulent non-disclosure connotes awareness that the illness is of that character.

*Third:* There was no error in the challenged rulings on evidence. The objection urged by appellant goes to the weight of lay opinion rather than its competency.

Judgment affirmed, with costs.