The bill in this cause is filed to cancel two insurance policies sold and delivered by complainant to one Samuel Somers during his lifetime and to discharge complainant from any liability under said policies to the beneficiaries named therein. *Page 420 
Prior to the filing of the bill of complaint defendants had instituted suits at law against complainant seeking a recovery under said policies. These suits were enjoined pending determination of the issues raised on complainant's bill.
 FACTS.
Samuel Somers made in writing two separate applications for life insurance policies from complainant. These applications were both dated March 10th, 1944, and each contained the following questions and answers:
"11. Have you ever had any ailment or disease of
 (b) The Heart or Lungs? No.
 (c) Have you ever had Diabetes, Pleurisy or Pneumonia? No.
 (f) Have you ever had any Surgical Operation? No.
 (g) Have you consulted a physician for any ailment or
 disease not included in your above answers? No."
"13. What clinics, hospitals, physicians, healers or other
 practitioners, if any, not named above, have you
 consulted or been treated by within the past five
 years?
 If none, so state. NONE."

Each of the foregoing applications also contained Provision 4, as follows:
"4. The Company shall incur no liability under this application until it has been received, approved, and a policy issued and delivered, and the full premium specified in the policy has actually been paid to and accepted by the Company during thelifetime and continued insurability of the applicant, in which case such policy shall be deemed to have taken effect as of the date of issue as recited on the first page thereof, except that if the applicant pays in cash to the Company, on the date this application is signed an amount equal to the full first premium on the policy applied for and if this application is approved at the Company's Home Office for the class, plan and amount of insurance herein applied for, then the policy applied for shall be in force from the date of the application."
The two policies applied for were written and dated April 7th, 1944, and delivered to the insured on April 10th, 1944, at which time the first aggregate premiums were paid in cash.
On April 10th, 1944, and before the delivery of either policy, Mr. Somers also signed an application for amendment *Page 421 
to one policy, asking for a change of plan of insurance with respect to that one policy, this change having been made necessary by reason of the refusal of complainant to issue the kind of policy originally applied for. In this application for amendment the insured, over his signature, said:
"These amendments and declarations are to be considered as apart of the said application and subject to the agreements, covenants, and statements therein contained. The said application, together with these amendments, is to be considered as the basis of and as a part of the contract of insurance. Thesaid application, as amended, is correct and true, and I herebyratify and confirm the statements therein made as of the datehereof."
The evidence at final hearing disclosed that Mr. Somers had consulted a physician prior to March 10th, 1944, to wit, a Dr. Durham on November 16th, 1943, and on December 9th, 1943, and that his ailment at the time of these visits was diagnosed by the doctor as a cold. Complainant admits that had it known of these visits to Dr. Durham and that the diagnosis was a mere cold it would have issued the policies without question or further investigation. The evidence further disclosed, however, that on March 30th, 1944, eleven days before the policies were delivered, Mr. Somers was examined by a Dr. Sweeney, at which time he complained of a stiffness in the upper right lung and shoulder which had persisted for the past three or four months and which ached more when he was working. Mr. Somers told Dr. Sweeney that he had been treated by a doctor for this condition for several months, "three or four months," without relief. Dr. Sweeney examined Mr. Somers at this time and hearing rales in the right apex of the lung, resorted to the use of the fluoroscope, through which he discovered a dense region in the right apex of the lung, whereupon Dr. Sweeney recommended that an X-ray be taken, not, however, divulging to Mr. Somers that he was suspicious that carcinoma might be the trouble. He did advise Mr. Somers, however, that the condition was probably an adhesion in the lung.
Dr. Bradley made an X-ray examination of Mr. Somers on March 31st, 1944, with a diagnosis as follows: provisional carcinoma of the right lung, and suggested a bronchoscopy *Page 422 
and X-ray examination be made. Dr. Sweeney received the report from Dr. Bradley, as did Dr. Durham, Mr. Somer's family physician. Dr. Durham made a fluoroscopic examination and immediately got in touch with a Philadelphia physician for the purpose of having the bronchoscopy and X-ray examination made by Dr. Jackson in Philadelphia. This examination was made by Dr. Jackson in Philadelphia at Temple University on April 18th, 1944, and resulted in a confirmation of the diagnosis of Doctors Sweeney, Bradley and Durham.
Dr. Durham, at the time of Mr. Somers' visit to him on April 3d 1944, at which time Dr. Durham had Dr. Bradley's diagnosis, told Mr. Somers that he had some trouble in his right lung but he did not tell Mr. Somers the nature thereof and particularly did not tell him that it was probably a cancerous growth. From the time of these examinations aforesaid, Mr. Somers was treated for his condition until his death from that cause in the following September.
Other doctors, Dr. Martsolf and Dr. Clark, testified as to statements made by Mr. Somers to them, Dr. Clark at the time he made his medical examination before the issuance of the policies, and Dr. Martsolf as of the time when Mr. Somers entered the hospital for treatment two days before his death. Mr. Somers, in his statement to Dr. Clark at the time of the medical examination before the issuance of the policies, said that he had not lost any weight within a given period. Mr. Somers in his statement to Dr. Martsolf said that he had lost weight over a period of a year and that he had been suffering with repeated colds during that time and that he had had no relief. But again it must be repeated that there is no intimation of any kind that Mr. Somers knew of his true physical condition.
From the foregoing it is evident that prior to the delivery of the policies on April 10th, 1944, Mr. Somers was suffering from the effects of the disease which caused his death on September 28th, 1944, and that while he did not know he was afflicted with an incurable disease, he did know from Dr. Durham and Dr. Sweeney that there was some impairment or ailment in the upper region of his right lung; that *Page 423 
Mr. Somers was aware that he was a sick man on and before April 10th is borne out by his statement to Dr. Martsolf, made on September 26th, 1944, just two days prior to his death. In that statement he said that "the history of his illness, to his knowledge, began a little over a year prior to" September 26th, 1944; that these symptoms were loss of weight, loss of appetite and initiative; that in October, 1943, he developed a gnawing feeling in his chest, accompanied by repeated colds; and it is undisputed that he did not, on April 10th, 1944, the date of the delivery of the policies, divulge to the complainant his visits to the three doctors, Durham, Sweeney and Bradley, nor did he divulge at that time the result of these visits, and it also seems apparent that he knew at that time that his trouble was more than a persistent cold. It is also evident that the condition of which he complained on or before March 10th, 1944, shortly thereafter resulted in his death, and that by withholding from complainant the details of his visits to the three doctors, complainant was prevented from recourse to these gentlemen and thereby from gaining knowledge of their "suspicion" that Mr Somers was suffering from an incurable disease.
Of course, the company's representative testified that had they known of these visits to the three doctors and the results thereof the policies would not have been issued. I do not indulge in any thought that Mr. Somers knowingly attempted to obtain insurance with knowledge that he was so severely afflicted and assume that he thought he would regain his health, and he was not, therefore, guilty of conscious fraud. But there can be no doubt that had he made known to complainant that of which he did have knowledge, this suit would never have been necessitated.
Both policies provide, as aforesaid, that neither policy shall be in effect until the policy is paid for and delivered "during the lifetime and continued insurability" of the applicant. There seems to be no doubt from the evidence that Mr. Somers was not an insurable risk on April 10th, 1944.
The application for amendment to the one policy provides as hereinabove quoted, i.e., that Mr. Somers ratified and confirmed the answers to questions in his application of March *Page 424 
10th, 1944, as of April 10th, 1944, which is tantamount to a continuing statement that he had consulted no physicians during the last five years, that he had never had a disease of the lungs, and that he had not consulted any physician for that period.
It is argued that inasmuch as the application for amendment applied to only one policy that the ratification and confirmation of his answers in the original application for the one policy did not affect the other. Of course, had deceased corrected his answers to the questions propounded in the application for the amended policy and advised of his visits to the doctors there would have been ample opportunity for the company to interview these doctors, and complainant would have become aware of deceased's true condition, and the company having been so advised as to the one policy, would not have issued the other policy, and even were this not true, the deceased was not "an insurable risk" under either policy at the time they were issued and delivered.
I think there may be no doubt that Mr. Somers was entitled, in so far as he knew and in so far as the examination of the insurance company's doctor was concerned, as of March 10th, 1944, to receive his policies of insurance, but as heretofore stated, I likewise have no doubt that the physical condition of Mr. Somers as he had represented it in his original application of March 10th, 1944, had deteriorated very much. Mr. Somers must have known this. He knew that after March 10th he had had no relief from his ailments, for which he had consulted Dr. Durham in 1939; he knew that he had been continuously ailing for a period from thence on, and without relief, as he told Dr. Martsolf and Dr. Sweeney; he knew he had lost twenty-five pounds in weight, as he told Dr. Martsolf; he knew that he had been in consultation with Doctors Sweeney, Bradley and Durham between March 20th and April 10th; he knew that he had been fluoroscoped by two of these physicians and that Dr. Bradley had X-rayed his chest; he knew on April 3d, a week before the delivery of the policies, that Dr. Durham had made arrangements for him to undergo a further examination through Dr. Jackson at Temple University. He was bound *Page 425 
by his contract of renewal as to the one policy by the provision before quoted. He represented himself under both policies as being "an insurable risk" on April 10th under the contract provision so providing. He had not been told of the fact that three doctors had diagnosed his condition as probably cancerous, but he chose not to divulge to his insurer that which he did know. He knew that he was unwell and uncomfortable and that his lungs were the subject of the fluoroscope examinations, as well as X-ray, and that he was to be bronchoscoped by Dr. Jackson. These concealments were of very material facts, vitally affecting the risk, and, conscious or unconscious, in so far as Somers was concerned, they were fraudulent, at least in equity, and unfortunate though it is as to Mr. Somer's beneficiary, the decree must be for the complainant. If my factual findings are justified, the citation of cases to support the decree would seem unnecessary.
It is admitted by defendant that rescission may be had in equity upon proof of reliance upon material representations untrue in fact, without proof of conscious or intentional fraud.Metropolitan Life Insurance Co. v. Lodzinski, 124 N.J. Eq. 357; 1 Atl. Rep. 2d 859, and cases therein cited.
In Kerpchak v. John Hancock Mutual Life Insurance Co.,97 N.J. Law 196 (at p. 198); 117 Atl. Rep. 836, the court said:
"Every fact which is untruly stated or wrongfully suppressed must be regarded as material, if the knowledge or ignorance of it would naturally or reasonably influence the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium."
Defendants rely heavily on Shapiro v. Metropolitan LifeInsurance Co., 114 N.J. Eq. 378; 168 Atl. Rep. 637, and Zoch
v. Metropolitan Life Insurance Co., 117 N.J. Law 295;187 Atl. Rep. 777.
In the Zoch Case the court, on page 296, pointed out the terms of the contract of insurance, which were: "the company shall incur no liability * * * until it has been received, approved, and a policy issued and delivered." *Page 426 
On page 298 of that case the court pointed out: "here neither sound health at the time of the delivery of the policy, nor the same state of health as existed at the time of the making of the application, nor the non-attendance of a physician subsequent thereto, was made a condition precedent to the inception of the contract, in which event the validity of the policy would depend alone upon the existence of the stipulated fact, and not upon the knowledge of the insured and concealment by him with fraudulent intent."
In the present case the contract did provide, as heretofore noted, that the policy should not be in force excepting on delivery, c., during "the continued insurability of the applicant," and the fact as proved at the final hearing was that Mr. Somers was not an insurable risk as of the date of the delivery of the policies.
The Shapiro Case was decided on a factual finding by the court that the answers given by the assured on his application for insurance were not false to the knowledge of the applicant under the circumstances of that case, but that they were true "to the extent of his knowledge." This same finding would have been made in the instant case in so far as the answers to the questions on the original application for insurance are concerned, but here we have a hiatus between the date of these applications, during which time three different doctors were consulted, as aforesaid, and we also have an application for amendment to one policy, providing the questions and answers in the original application are ratified and confirmed "as of the date hereof," April 10th, 1944. We also have the contract provision that neither policy was to be in force until the payment of premiums, c., "during the continued insurability of the applicant."
I have not dealt with the doctrine of "continuing" representations which would require an applicant for insurance to communicate subsequent changes of condition of the insured before delivery of the policy, as referred to in the Zoch Case (at p.297), in which the court cites Sticich v. Metropolitan LifeInsurance Co., 277 U.S. 311; 48 S.Ct. 512; 72 L.Ed. 895, for the reason that it seems unnecessary so to do, in view of the foregoing findings, but it would seem to me that under *Page 427 
the facts of this case that doctrine is applicable and, being applied, would require a decree for complainant. As said in29 Am. Jur., § 544 (at p. 440), under "Insurance:"
"If, while the insurer deliberates, the applicant discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing calls for a full disclosure."
The final defense urged in the brief of defendants' counsel is that Mr. Somers did not read the application for amendment when he signed it and was ignorant of its terms. There is no proof of any fraud on the part of complainant or its agents or anyone else in the procurement of Mr. Somers' signature on the application for amendment, and there is no allegation of such fraud in defendants' pleadings, so that this defense is not available to defendants. Metropolitan Life Insurance Co. v. Alvarez,133 N.J. Eq. 65; 30 Atl. Rep. 2d 297, citing many cases.
The result is that a decree will be advised declaring both policies of insurance on the life of Mr. Somers null and void and of no effect, and that they be surrendered up for cancellation and complainant be discharged from its obligation thereunder, subject to the return of the premiums.