## TARRANT COUNTY WATER CONTROL AND IMPROVEMENT DIST. NO. 1 v. FOWLER.

### No. 13436.

Court of Civil Appeals of Texas. Dallas.

Oct. 22, 1943.

Rehearing Denied Nov. 19, 1943.

Samuels, Brown, Herman & Brown and Dunklin & Hampton, all of Fort Worth, for appellant.

A. G. Alexander and Walker, Smith & Shannon, all of Fort Worth, for appellee.

LOONEY, Justice.

The suit grew out of the following facts: Prior to October, 1932, appellee, F. M. Fowler, became the holder of the record title to 184 acres of land situated in Tarrant County, Texas. This land lies on both banks of Ash Creek, which flows from the west into the West Fork of the Trinity River. The title to the land, save that land embraced within the banks of Ash Creek—about four acres—was not in controversy.

On October 28, 1932, appellant, Tarrant County Water Control and Improvement District No. 1, had substantially completed a dam across the West Fork of the Trinity River, known as Eagle Mountain Dam, for the purpose of controlling floods in the valley below and conserving water, as authorized by Section 59 of Article XVI of the Constitution, Vernon's Ann.St., and the enabling statute, Article 7880—1 et seq., of Vernon's Texas Civil Statutes, under which the appellant was organized. On February 4, 1934, appellant closed the conduits under the dam, provided to restrain or release waters, and thereafter progressively caused water to be accumulated in Eagle Mountain reservoir.

Appellee's suit was based on the claim that the dam produced a backwater condition in Ash Creek, and, after May, 1935, caused water constantly to be stored in the channel of Ash Creek, had caused his riparian valley lands to be inundated in 1935, 1939, 1941, and in April, 1942, and that the cause of such inundations was permanent in nature.

Appellee sued the District in two counts, one in trespass to try title and, in the alternative, for compensation provided in Sec. 17 of Article 1 of the Constitution, for the taking and damaging of his property. Appellant interposed various defenses, among which was a plea of limitation under the two years' statute, Vernon's Ann. Civ. St. art. 5526, and a plea that it was lawful for the District, as agent of the State and in its behalf, to utilize the capacity of the channel of Ash Creek for the storage of water, in that Ash Creek was a navigable stream within the meaning of the statute.

The case was tried under the alternative count, was submitted to a jury on issues deemed appropriate and, on their findings, a money judgment was rendered for appellee, and the court adjudged to the District an easement on appellee's land for the operation of its project. On motion for a new trial by appellant, the court required a remittitur, which being accepted by appellee under protest, the judgment appealed from was rendered. Appellee complains of the remittitur under Rule 328 applicable in civil cases. The case is before us on transfer by the Supreme Court from the Second District.

We are indebted to counsel for able and exhaustive briefs and arguments, written and oral; seemingly, nothing of importance has been overlooked or left unsaid. The record being voluminous, the temptation to write lengthily is presented, but in order not to transgress Rule 453, we shall in the main state conclusions rather than the evidence, and cite and quote only from those authorities deemed most pertinent.

Appellant urges a number of points based upon the contention that, within the meaning of the statute, Ash Creek was a navigable stream, that the land between its banks belonged to the State; and that, in constructing and operating Eagle Mountain Dam and the reservoir created thereby, appellant exercised the property rights and powers of the State; hence incurred no liability to appellee by reason of utilizing the land between the banks of the creek to conserve water and retard the slow release of excess floods, consequently, the court erred in not withdrawing from the jury consideration of such diminution of the market

value of appellee's riparian lands as may have been caused as the result of appellant's use of the capacity of Ash Creek to store waters between its banks; and that the court also erred in not eliminating from the jury's consideration the value of land embraced between the banks of the creek.

The basis for appellant's contention is Article 5302, Vernon's Ann.Civ.St., enacted when Texas was a republic, providing in substance that all lands surveyed for individuals, lying on navigable watercourses, shall front one-half of the square on the watercourse and the line running at right angles with the general course of the stream if circumstances of lines' previously surveyed under the laws will permit; and that: "All streams so far as they retain an average width of thirty feet from the mouth up shall be considered navigable streams within the meaning hereof, and, they shall not be crossed by the lines of any survey * * *."

The record discloses that the land involved was patented in 1858 and that the lines of the survey cross the creek, that is, the creek runs through the body of the land. Although the evidence revealed with reasonable certainty that, from its entrance into and passage through appellee's land, Ash Creek maintains an average width of at least thirty feet, but the evidence, in our opinion, did not satisfactorily show that the creek maintains such width from its mouth up to appellee's land. Consequently, if we deemed the decision of this question vital, would be constrained to hold in support of the court's judgment, that the evidence failed to show the creek maintained an average width of thirty feet from appellee's boundary line to its mouth, that is, its confluence with the West Fork of the Trinity. However, in view of the explicit provisions of what is known as the "Small Act," that validated patents on state lands in beds of streams, granting same to the patentees and their assignees, enacted by the 41st Legislature, effective March 3, 1929, we are decidedly of opinion that the navigability, whether or not, of Ash Creek is immaterial.

The Act in question, now Article 5414a, Vernon's Ann.Civ.Sts., confirmed and validated patents covering or including the beds or abandoned beds of watercourses or navigable streams, issued and outstanding for ten years from the dates thereof, and thereby the State granted, relinquished and quitclaimed to the patentees and their assignees the lands and minerals therein contained, lying across or partly across watercourses or navigable streams. The Act also provided that the right of the public, the State or riparian owners in the waters of such streams, should not be impaired, or the right of the State to minerals in lands sold reserving title to the minerals, and contained this: "Provided that this Act shall not in any way affect the State's title, right or interests in and to the sand and gravel, lying within the bed of any navigable stream * * * ," as defined in Art. 5302 above mentioned. The Small Act was brought under review in the case of State v. Bradford, 121 Tex. 515, 50 S.W.2d 1065; and its constitutionality was sustained and the Act construed in a lengthy opinion by Judge Sharp, then a member of the Commission of Appeals, but now a member of the Supreme Court; the opinion, however, was expressly adopted as the opinion of the Supreme Court. So, in view of the provisions of this Act, whether or not Ash Creek is navigable is an immaterial inquiry; for, in either event, appellee and not the State owned the land in its bed or between its banks.

But appellant contends that by virtue of the reservation contained in the "Small Act," quoted above, the State owned the sand and gravel in the bed of the creek, and that under the judgment rendered, appellee was permitted to recover damages therefor. No basis either in objection to the court's charge, in the requested issues refused, in the motion for a new trial, or in points of error, was laid for this contention, as appellant raised the question arguendo for the first time on appeal in its second supplemental brief.

But aside from this, the provision of the Small Act, reserving to the State the sand and gravel in the bed of Ash Creek, in our opinion, is void and of no effect, in that, no mention was made thereof in the Title to the Act. Section 35, Article 3, of the Constitution provides that: "No bill, (except general appropriation bills * * *) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed." Examination of the Title to this Act discloses that, while the provisos reserving to the State and riparian owners waters in such creeks and watercourses, and to the State, the minerals in lands sold reserving minerals, were express-

ly mentioned, no mention whatever was made indicating that the body of the Act would contain any reservation by the State of the sand and gravel in the bed of these creeks and streams. If the Title to the Act had not mentioned any reservations, a different construction doubtless should obtain, but having mentioned several reservations, we think that, under the maxim "expressio unius est exclusio alterius," all reservations not mentioned must be excluded, and that under the provisions of the Constitution above referred to, the proviso under consideration, although appearing in the body of the Act, but not mentioned in the Title, must be held of no effect. So, we reach the conclusion that all points of error relied upon by the appellant, based upon the assumption that Ash Creek was a navigable stream, should be and hereby are overruled.

The cause having been tried on the theory that the construction and operation by appellant of Eagle Mountain Dam constituted a taking and a damaging of appellee's land, within the meaning of Section 17 of Article 1 of the Constitution, and the court having submitted issues appropriate to that conception of the case, requiring the jury to find what would have been the market value of appellee's land at the time of the trial, if the dam and its appurtenances had never been constructed and put in operation, also its market value with the dam and its appurtenances in operation, and the jury having answered these questions, from which the court ascertained the amount of the damages, and rendered judgment in favor of appellee for the amount thus ascertained; also adjudged to appellant an easement in appellee's lands for the operation and maintenance of its project. We must conclude, in support of the judgment rendered, that the court found from the facts, aside from the findings of the jury, that the construction and operation by appellant of its project constituted a taking and a damaging of appellee's property, entitling him to adequate compensation as provided by the Constitution, and after a careful review of the facts, we have reached the same conclusion.

In this connection we mention a few of the salient facts: The first backwater to inundate appellee's land was in 1935; subsequently, it was partially inundated in 1939, 1941 and 1942 in varying depths and degrees. In 1939, backwater from the dam extended entirely over the land in the bed of Ash Creek; and in 1941, backwater remained on appellee's bottom land from June 12 to July 7, destroyed growing crops and meadow grass, leaving the land in a boggy condition, inaccessible for at least a month, and deposited cocklebur, weed, willow and elm seeds; and on April 19, 1942, water covered practically the entire bottom land (about fifty acres) and remained until May 11, leaving a deposit of driftwood, sand and other debris, washed out fences, destroyed growing crops, covered the grass, and, to an appreciable extent, filled up the bed of the creek. Since then, in the language of one of the witnesses, "The most vital part of the man's land has been destroyed." The dam, of course, is a permanent structure and, at spillway levels, at intervals, will cause water to back upon and inundate appellee's land in varying depths and degrees, dependent upon the amount of rainfall, and should the spillway gates (39 ft. in height) be closed, as they may be at any time, without consulting appellee, practically his entire place would be inundated. This condition, in our opinion, will become progressively more serious, as it was shown that during the last few years, the bed of Ash Creek has half filled with sand and gravel, diminishing its carrying capacity, and, obviously, in times of heavy rainfall, will cause the water to leave its bed and spread out over the adjacent land. That these results were contemplated when the dam was erected is shown, we think, by the evidence of the engineer upon whose plans and advice the dams and reservoir were constructed. He testified in substance that he made studies of all the conditions before the reservoir was constructed; prepared the plans and specifications and provided engineering supervision; that the project consisted of a main dam across Trinity River and a spillway section; the dam and spillway being 80 ft. in height; that, with the water ten feet over the spillway, approximately 50 acres of appellee's land would be submerged; that after a thorough investigation of the watershed, taking the rainfall into consideration, making the surveys necessary and doing what he thought was material, resulted in his advice to the District as to what might be expected in the way of backwater at spillway level; furnished maps showing the same and calculated that backwater would, in his view, at times reach an additional 19 ft. over the spillway. At 19 ft. over spillway, appellee's land would be covered to the extent of 111 acres; 19ft. being less than

half the height of the gates (39 ft.), which if closed, as they may be, appellee's place doubtless would be entirely covered with water. With this situation confronting it, appellant could either have purchased or condemned appellee's land, but did neither. We think the evidence shows there has been a "taking" within the meaning of the Constitution, and that appellant is wrongfully using appellee's land without having either condemned the same or compensated him therefor.

█ In support of this conclusion, we will refer to only a few of the pertinent authorities to which our attention has been called. The applicable rule is announced in a general way in 29 C.J.S., Eminent Domain, § 117, in the following language: "Where land is flooded, or its drainage prevented, by the obstruction of the flow of water, or its diversion from its natural channel, there is, in general, such a taking or injury as entitles the owner to compensation, although the improvement causing the injury was authorized by the legislature." And from 18 Am.Jur., 796, para. 165, we quote the following: "Where real estate is actually invaded by superinduced additions of water, earth, sand, or other material, or by having any artificial structure placed on it, so as effectually to destroy or impair its usefulness, it is a taking within the meaning of the Constitution, even though the works are constructed for the improvement of navigation." In United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 385, 61 L.Ed. 746, the court used the following language in point here; it said: "There is no difference of kind, but only of degree, between a permanent condition of continual overflow by backwater and a permanent liability to intermittent but inevitably recurring overflows; and, on principle, the right to compensation must arise in the one case as in the other. If any substantial enjoyment of the land still remains to the owner, it may be treated as a partial instead of a total divesting of his property in the land. The taking by condemnation of an interest less than the fee is familiar in the law of eminent domain." In City of Armarillo v. Tutor, Tex.Com.App., 267 S.W. 697, 699, the Commission of Appeals said that: "Any damage or injury peculiar to one's particular property, and not suffered by it as a result of the construction of the public work in common with other properties in the same community, is ground for a judgment fixing liability against the city as well as against a railroad or any other person or corporation doing work of a public nature. Any interference, by the construction of works, with any right, public or private, legally enjoyable by the owner or occupant of property used in connection with such property, and giving an additional market value to such property separate from the use to which any particular owner might put it, forms a legal ground for compensation, guaranteed by the Constitution, if by reason of such interference the property as such is lessened in value." The case of the City of East Dallas v. Barksdale, 83 Tex. 117, 18 S.W. 329, was a suit by the owner of land to recover damages for a taking, within the meaning of the Constitution. The Supreme Court held that the City was a trespasser; that it was optional for the plaintiff to sue for the land or for damages for trespass, and plaintiff having sued and obtained judgment for the value of the land taken, it was held that she had elected to ratify the taking, and that it was appropriate for the court to vest the title to the land in the City upon satisfaction of the judgment. As heretofore shown, a similar order was made in the instant case, as an easement in appellee's land was vested in appellant on satisfaction of the judgment. As an additional authority for this procedure, see International & G. N. R. Co. v. Benitos, 59 Tex. 326–329. In the case of Ft. Worth Imp. Dist. v. City of Ft. Worth, 106 Tex. 148, 158 S.W. 164, 169, 48 L.R.A.,N.S., 994, Judge Phillips, for the Supreme Court, said: "Whenever the injury amounts to a direct invasion of the given property, so as to destroy it for its accustomed use, accomplishing in effect an actual appropriation, as, according to the certificate, would be the effect upon the appellee's property under the condition of an ordinary flood in the bordering stream, there can be no doubt that the damage is not merely consequential in its nature, but is of the character for which, in cases of private property, compensation would have to be made if the act causing the injury were permitted." The case of the City of Waco v. Roberts, 121 Tex. 217, 48 S.W.2d 577, 578, involved the right to compensation for a tract of land on which the City, by digging a channel and building an embankment, had caused water to be impounded. The question involved was whether a taking within the meaning of

the Constitution had been established. With reference to this, the Supreme Court, speaking through Judge Curton, said: "Under the allegations of the petition and the findings of the jury, what the city has done amounts to a taking of the property of the defendants in error without compliance with the mandatory provisions of section 17 of article 1 of the Constitution, * * *."

■ These authorities, in our opinion, sustain the conclusion that the facts show a taking of appellee's land within the meaning of the Constitution, entitling him to damages, the measure of which, in our opinion, is the same employed in condemnation proceedings where, as in the instant case, the taking was without the owner's consent, without purchase, and without condemnation. This proposition, in our opinion, is fully sustained by the following authorities: In 16 T.J., Sec. 314, p. 995, it is stated that: "Apart from any question as to additional damages for trespass, the damages recoverable in an action by an owner for the appropriation of his property without compensation are measured by the same rule as would have been applied if condemnation proceedings had been taken; * * *." In the case of Texas & St. L. R. Co. v. Matthews, 60 Tex. 215, the Supreme Court had before it a case in which the property owner sued a railway company for damages for a taking without condemnation. The Court posed the following question: "What is the measure of damages in an action brought by the owner of land against a railroad company for taking possession of a portion of his land without his consent and constructing a railroad through it?"; and proceeded to answer the same as follows: "The compensation as fixed by the statute [condemnation statute] referred to should, by analogy, be applied to such a case, and the plaintiff should recover the amount of the value of the land appropriated on the day it was taken, * * *". In Williams v. Henderson County Levee Imp. Dist., Tex.Com.App., 59 S.W.2d 93, 96, the Commission of Appeals had under consideration a similar situation, where there had been a taking without condemnation, in a suit by the landowner for damages; among other things, the court said: "It is undisputed that the district dug its ditches and constructed its levees and diverted water, as above stated, without offering to pay the owners of the land so taken and damaged or to make a bond in compliance with the plain letter of the statute to compensate the owners in case of any award against the district upon appeal. The burden was upon the district to show that it had complied with the law. This was not done. Under the state of this record, the district was a naked trespasser and it was proper for the trial court to estimate the value of the land taken or damaged as of the date of the trial." (citing authorities) In Texas Western R. Co. v. Cave, 80 Tex. 137, 15 S.W. 786, the Supreme Court was considering an action in trespass to try title to recover property taken without either condemnation or compensation, in which the defendant filed a cross-action seeking condemnation, the court held that the value of the land taken and the injury to the land not taken are to be assessed as of the date of the condemnation and not as of the time of the original entry by the Railway Company. And in San Antonio & A. P. R. Co. v. Ruby, 80 Tex. 172, 15 S.W. 1040, the Supreme Court had under consideration a similar case, and held that (Syl. 3): "Under Const.Tex. art. 1, § 17, providing that no person's property shall be taken for public use without adequate compensation, the amount of compensation in the case of land occupied by a railroad is to be determined by the value of the land at the time of condemnation, which is at the time of the trial of the proceedings, and not at the time the land was first occupied." In Leslie County v. Davidson, 270 Ky. 705, 110 S.W.2d 652, the Court of Appeals of Kentucky held (Syl. 1) that: "Action against county and State Highway Commission to recover alleged value of strip of land taken for a state highway and for resulting damage to remaining property was properly treated as a 'condemnation proceeding.'"

■ These authorities and others to the same effect that could be cited, in our opinion, fully sustain the conclusion that the appellee's damages were correctly assessed as of the date of the trial, and we think this is as it should be. Appellee could not force condemnation; did all he could do, that is, sue for the property or, in the alternative, for compensation. Title to the property remained in him until some action was taken by the court passing title to the appellant, which was done, as the court vested an easement in it on payment of damages, and thus, for the first time, title to the easement passed from appellee to the appellant, and a

legal taking requiring condemnation was consummated. We therefore overrule all contentions that any other measure of damages should have been applied.

■ However, appellant plead and contends here that appellee's claim was barred under the two years statute when the suit was instituted on March 17, 1937, in that the cause of action, if any existed, accrued not later than February 4, 1934, the outlet conduits serving the dam having been closed on that date, which was more than three years before the institution of the suit. This contention is based on the idea that the cause of action arose at that time, although the injurious effects of the act were latent and injuries resulting therefrom were delayed. In support of this contention, appellant cites authorities applicable to cases of a class to which it is sought to assimilate the instant case, but, in our opinion, the cases are not similar, nor the authorities cited applicable or controlling here, as there was a taking in the instant case; hence appellee's claim would not have been barred short of the period necessary to acquire lands by adverse possession, that is, ten years in this state, which defense was neither plead nor is it insisted upon. The conclusion just announced, in our opinion, is amply supported; the rule deduced from the weight of applicable authorities is stated in 18 Am.Jur. Sec. 394, p. 1042, as follows: " * * * On the other hand, it is held that where the Constitution requires compensation first to be paid before an owner's land is taken, the burden of prosecuting his claim for compensation cannot be placed on the owner prior to the running of the prescriptive period. * * *." And in Lewis on Eminent Domain, 3rd Ed., Sec. 967, it is announced that: "Where the Constitution, either expressly or as interpreted by the Court, requires compensation to be first made for property taken for public use, a law which casts the initiative upon the owner and requires him to prosecute his claim for compensation within a time limit or be barred, is invalid. When under such a Constitution property is appropriated to the public use without complying therewith, the owner's right to compensation is not barred except by adverse possession for the prescriptive period." In Aylmore v. City of Seattle, 100 Wash. 515, 171 P. 659, 661, L.R.A.1918E, 127, the action, as in the instant case, was to recover possession, or, in the alternative, damages for the taking. The defense was the two and three-year statute of limitation. The Supreme Court of Washington, citing and quoting from various jurisdictions, including the Cave case from our Supreme Court, heretofore referred to, reached the conclusion that there was a taking; that the only statute of limitation applicable was the one dealing with the acquisition of title through prescription; the court said: "Moreover, to hold that the action for compensation is barred in two years would be to read an exception into the ten-year statute relating to the recovery of real property. The effect of such a decision would necessarily be to permit a title to real property, for all practical purposes, to be acquired by adverse possession for the period of two years, when in all other cases it could only be acquired in ten years." And in Oklahoma City v. Wells, 185 Okl. 369, 91 P.2d 1077, 1083, 123 A.L.R. 662, in all material respects similar to the instant case, the court, after reviewing many authorities, reached the conclusion that: "The great weight of authority, and as we view it the better reasoning, supports the contention of defendants in error that their claim is not barred by any statute of limitations since the 15 years required to obtain title by prescription has not elapsed." We therefore overrule the contention of appellant that appellee's cause of action was barred at the institution of the suit."

We have given due consideration to all points of error urged by appellant, and believing that all material questions presented are comprehended within the scope of the preceding discussion, overrule the same.

■ This brings us to appellee's sixteenth counterpoint, or cross-assignment, complaining of the action of the court in requiring him, over protest, to remit $2,300 of the amount of the judgment originally rendered, in accordance with the findings of the jury (this procedure is authorized by Rule 328, prescribed for practice and procedure in civil cases). The court assigned no reason for its action in this respect and we fail to find anything in the record justifying such action. The judgment as originally rendered was based upon findings by the jury that, in our opinion, were authorized by evidence; hence the action of the trial court, in effect, was but the substitution of its judgment on the facts for that expressed by the jury, which, in our opinion, was not justified. We therefore sustain appellee's counterpoint number sixteen.

It follows from what has heretofore been said that, we are of opinion the judgment below should be reformed by restoring to it the remitted amount, and, as reformed, should be and hereby is affirmed.

Reformed and affirmed.