**W. R. HUBLER, Appellant,**

v.

**CITY OF CORPUS CHRISTI, Texas, et al., Appellees.**

**No. 1240.**

Court of Civil Appeals of Texas, Corpus Christi.

March 31, 1978.

Rehearing Denied April 27, 1978.

**818**

Bill Blackburn, Corpus Christi, for appellant.

Gerald L. Benadum, First Asst. City Atty., Corpus Christi, Michael E. Stork, Asst. Atty. Gen., Austin, for appellees.

## OPINION

NYE, Chief Justice.

This is an inverse condemnation case under the Texas Constitution Article 1, Section 17, brought by plaintiff Hubler (appellant here) against defendants, the City of Corpus Christi (City) and the Texas State Department of Highways and Public Transportation (State). The City and State filed numerous special exceptions to plaintiff Hubler's pleadings which the trial court granted. Plaintiff, in open court, refused to amend his pleadings to meet the special exceptions sustained by the trial court. The trial court thereafter dismissed plaintiff's cause with prejudice. Plaintiff Hubler perfected his appeal to this Court. The only issues in this appeal concern the sufficiency of plaintiff's pleadings to allege a cause of action for a "taking".

In October 1967, plaintiff purchased approximately fifteen and one-half (15½) acres of the "Flour Bluff and Encinal Farm and Garden Tract" located within the city limits of Corpus Christi, Texas. This land is fronted on its southwest boundary by a body of water known as "Cayo del Oso". Plaintiff's land includes an area of low elevation through which the surface waters of the area naturally drain into the Oso. Plaintiff's petition alleged that one and one-half acres of his land were subject to this natural drainage easement.

Plaintiff's theory of recovery is that the defendants, through their combined municipal drainage and state road construction projects, have in effect "taken" a drainage easement across plaintiff's land in excess of the natural drainage easement without paying plaintiff compensation or instituting condemnation proceedings in violation of Article 1, Section 17 of the Texas Constitution. In support of this theory of recovery the plaintiff alleged in essence: 1) that in 1961 the City promulgated a master drainage plan for the City of Corpus Christi and that in 1966, the City began to implement this master plan as it relates to his property by constructing drainage structures some three to five miles from his property; 2) that in 1972 the State completed improvements to South Padre Island Drive and that such improvements terminated one to two miles northwest of plaintiff's property; 3) that his land was subject to a natural drainage easement of one and one half acres; 4) that the defendants' completed projects had resulted in an intentional and repeated increase in the volume of surface water flowing across his land, which increase exceeded

the natural drainage easement; 5) that it is "probable within the foreseeable future the City will complete its essentially unitary project" and the "State will improve South Padre Island Drive down to and past plaintiff's property"; 6) that the completion of defendants' future projects will result in a further intentional and repeated increase in the surface water flowing across plaintiff's land in excess of the natural drainage easement; 7) that the present effects of the excess drainage caused by defendants' completed projects and the anticipated effects of defendants' future projects "constitute a present taking of a drainage easement" totaling 4.5 acres less 1.5 acres which is subject to the natural drainage easement; 8) that plaintiff should be compensated $3,900 representing the market value of the easement strip taken valued at the time of trial and $100,000 representing the decrease in market value to the remainder of plaintiff's land caused by the cost of preventive measures and curative repairs; and 9) that plaintiff should be compensated $30,000 for reasonable attorney, engineering and appraisal fees incurred by the plaintiff.

The defendants, on the other hand, contended they would be liable, if at all, for only a present partial taking as damaging of plaintiff's property directly caused by defendants' projects which were completed at the time of trial. Accordingly, the defendants filed numerous special exceptions directed to plaintiff's allegations concerning the anticipated consequences of defendants' future plans. In essence, the State's special exceptions, sustained by the trial court are as follows: 1) that future contemplated projects cannot as a matter of law constitute a present taking; 2) that plaintiff failed to specify the levels at which his land was being overflowed and the description of land allegedly taken incorrectly encompassed the anticipated effects of future projects; 3) that the measure of damages plaintiff sought included the decrease in market value attributable to future contemplated projects; 4) that the correct valuation date for determining the decrease in market value of plaintiff's land was the date the State completed its project and not

the date of trial as plaintiff alleged; and 5) that no State statute authorized plaintiff to recover attorney, engineer or appraisal fees. The City filed special exceptions similar to numbers 1) and 5) above. In addition, the City filed a special exception to each allegation contained in plaintiff's petition which related to an act done or caused by the City prior to November 21, 1972 (two years prior to the date plaintiff filed his original petition), on the basis that the facts so pled, if proved, would constitute only a Constitutional damaging of plaintiff's property, not a Constitutional taking, and therefore the two-year statute of limitations (Article 5526 Tex.Rev.Civ.Stat.Ann.) would bar a cause of action for damaging that occurred prior to November 21, 1972.

The trial judge sustained all of the above mentioned special exceptions. Accordingly, the paragraphs concerning future projects and the part concerning attorney, engineer and appraisal fees of plaintiff's petition were stricken and the suit was ordered abated until plaintiff amended his petition to allege specific facts concerning the effects caused by the defendants' completed projects only. Plaintiff, in open court, declined to amend and the trial judge dismissed the cause with prejudice.

Plaintiff brings forward ten points of error on appeal. The first six points of error attack the action of the trial court in sustaining defendants' special exceptions directed to plaintiff's allegations that future but uncompleted drainage project plans constitute a cause of action for a present taking (special exceptions 1–3 above). In point of error seven, the plaintiff asserts that the trial court erred in sustaining the City's special exception that plaintiff's claim is, as a matter of law, a claim for damages rather than a partial taking. In points of error eight and nine, the plaintiff attacks the trial court determination that plaintiff had pled the wrong valuation date (the date of trial), and in point of error ten plaintiff asserts that the trial court erred in sustaining the State's special exception to plaintiff's claim for reasonable attorney, engineer and appraisal fees. Our determina-

tion of the first seven points of error will dispose of the case.

When special exceptions addressed to a pleading are sustained, the party has two options available to him: 1) he may amend to meet the exception, (this he may do as a matter of right); or, 2) he may stand on his pleadings, refuse to amend and test the validity of the trial court's ruling on appeal. *McCamey v. Kinnear*, 484 S.W.2d 150, 152 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.); *Harold v. Houston Yacht Club*, 380 S.W.2d 184, 186 (Tex.Civ. App.—Houston 1964, no writ); *M. C. Winters, Inc. v. Lawless*, 407 S.W.2d 275, 277 (Tex.Civ.App.—Dallas 1966, writ dism'd); *Farris v. Nortex Oil and Gas Corp.*, 393 S.W.2d 684, 690 (Tex.Civ.App.—Texarkana 1965, writ ref'd n.r.e.). When the effect of the trial court sustaining of the special exception is to dismiss the cause of action, the exceptions have the effect of the old general demurrer, and upon appellate review, the allegations of the plaintiff's petition must be taken as true. *Hazlitt v. Provident Life & Accident Ins. Co.,*, 212 S.W.2d 1012 (Tex. Civ.App.—San Antonio 1948), aff'd, 216 S.W.2d 805 (Tex.Sup.1949); *Yarborough v. Industrial Accident Board*, 538 S.W.2d 19, 21 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.); *Farias v. Besteiro*, 453 S.W.2d 314 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n.r.e.); *City of Roma v. Starr County*, 428 S.W.2d 851 (Tex.Civ.App.—San Antonio 1968, writ ref'd n.r.e.). If we determine that the trial court properly sustained defendants' special exceptions and that there remained no cause of action stated in the remaining portion of plaintiff's petition, the trial court properly rendered a final judgment of dismissal. *Townsend v. Memorial Medical Center*, 529 S.W.2d 264, 267 (Tex. Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *Rutledge v. Valley Evening Monitor*, 289 S.W.2d 952, 953 (Tex.Civ.App.—San Antonio 1956, no writ).

The trial court is clothed with a large degree of discretion in ruling on special exceptions. Its ruling will not be disturbed on appeal in absence of a showing of abuse of discretion. *Townsend v. Memorial Medical Center*, supra; *McKinney v. Flato Brothers, Inc.*, 397 S.W.2d 525, 529 (Tex.Civ. App.—Corpus Christi 1965, no writ); *Jones v. Alvin State Bank*, 332 S.W.2d 124 (Tex. Civ.App.—Eastland 1960, no writ); *Weiler v. Weiler*, 336 S.W.2d 454 (Tex.Civ.App.—Eastland 1960, no writ); *Southern Underwriters v. Hodges*, 141 S.W.3d 707 (Tex.Civ. App.—Waco 1940, writ ref'd).

We first consider how the courts have defined a "taking" under the Constitution in an inverse condemnation case. Condemnation is the process by which property of a private owner is taken for public use, without consent, but upon the payment of just compensation. Inverse condemnation proceeding is when property has been taken for public use without process or without proper condemnation proceedings and the property owner is attempting to recover compensation therefor. *City of Abilene v. Burk Royalty Company*, 470 S.W.2d 643, 646 (Tex.Sup.1971); see *Brazos River Authority v. City of Graham*, 163 Tex. 167, 354 S.W.2d 99 (1961). A "taking" of land within the concept of Section 17, Article 1, of the State Constitution is an actual physical invasion or an appropriation of the property. *McCammon & Lang Lumber Company v. Trinity & Brazos V. Ry. Co.*, 104 Tex. 8, 133 S.W. 247 (1911); *Nueces County Drainage & Conservation Dist. No. 2 v. Bevly*, 519 S.W.2d 938, 943 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *Duvall v. City of Dallas*, 27 S.W.2d 1105 (Tex.Civ. App.—Dallas 1930, writ ref'd). In certain instances, acts short of actual physical invasion, appropriation or occupation can amount to a compensable taking where governmental agencies conducting public works projects have unreasonably interfered with the land owner's access to his property or have otherwise imposed restrictions that constitute an unreasonable interference with the land owner's right to use and enjoy his property. See *Pennsylvania Coal Company v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed.2d 322 (1922); *DuPuy v. City of Waco*, 396 S.W.2d 103 (Tex.Sup.1965); *San Antonio River Authority v. Garrett Brothers*, 528 S.W.2d 266, 273 (Tex.Civ.App.

—San Antonio 1975, writ ref'd n.r.e.); *Allen v. City of Corpus Christi*, 247 S.W.2d 130 (Tex.Civ.App.—San Antonio 1952); aff'd, 152 Tex. 137, 254 S.W.2d 759 (1953).

■ Plaintiff has not alleged that the defendants have imposed unreasonable restrictions on plaintiff's use and enjoyment of his land, nor has plaintiff alleged that defendants have in any way interfered with his right of access to his land. None of the drainage improvements of which plaintiff complains has been constructed on his land. Considering the allegations in plaintiff's petition as being true, the sole present physical invasion of plaintiff's land is an alleged intentional increase of surface waters caused by the defendant's *completed projects.* Even though no public improvements have been constructed upon plaintiff's land, plaintiff would have a cause of action for a partial taking if he could show that the defendants' completed projects directly caused the present increase of surface waters flowing across plaintiff's property and that such increase of surface waters repeatedly overflowed portions of plaintiff's land not previously subject to the natural drainage easement, thereby rendering this additional land so overflowed virtually useless to the plaintiff. On the other hand, occasional or intermittent overflows do not constitute a taking. *Brazos River Authority v. City of Graham*, supra; *City of Perryton v. Huston*, 454 S.W.2d 435 (Tex. Civ.App.—Eastland 1970, writ ref'd n.r.e.); *Tarrant County Water Control and Improvement Dist. No. 1 v. Fowler*, 175 S.W.2d 694 (Tex.Civ.App.—Dallas 1943, writ ref'd w.o.m.); 2 Nichols on Eminent Domain, § 6.23[3] (Rev. Ed. 1970).

Plaintiff's petition does not separately allege facts to support a present partial taking caused by the defendants' completed projects, but rather, the allegations include the anticipated combined effects of both completed and future projects.

The thrust of plaintiff's allegations concern the anticipated results of the completion of proposed projects which, at this time, obviously have not contributed to the additional increase in surface waters currently flowing across his land. Plaintiff's cause of action for an alleged partial taking must be limited to the amount of land actually invaded by surface waters in excess of the natural drainage caused by defendants' completed projects.

Plaintiff, however, contends in support of his theory of recovery, that the State's plan to complete Padre Island Drive and the City's plan to complete the city-wide drainage project in a series of stages or individual projects are, in essence, unitary projects and should be treated as such in considering the effect that the completion of these projects will have on his land. Plaintiff contends that by completing such projects in stages, the defendants are using the "old salami technique" by gradually depriving him of his land without instituting condemnation proceedings or paying just compensation. Plaintiff argues that for any particular short addition or completion of a project in the drainage system, even though it might increase the flow of water across his property, the effect on the market value is immeasurable, but when the totality of the segments of the drainage projects are considered as though they were now completed, the total acreage taken and the diminution of the market value to the remainder of plaintiff's land is significant. Therefore, plaintiff asserts he should have the right to plead and to prove that the reasonably foreseeable and probable completion of the drainage system by the City and the State are resulting in a present taking of a portion of his land and a diminution in the market value of the remainder.

■ It is well settled in Texas that future plans which might result in a future taking are merely "future prospects" and, as such, cannot constitute a present taking. See *City of Abilene v. Burk Royalty*, supra, at 647; *Brazos River Authority v. City of Graham*, 163 Tex. 167, 354 S.W.2d 99 (1961); *Thurow v. City of Dallas*, 499 S.W.2d 347, 348 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.); *Nueces County Drainage and Conservation Dist. No. 2 v. Bevly*, supra; *City of Houston v. Biggers*, 380 S.W.2d 700, 704 (Tex.Civ.App.—Houston 1964, writ ref'd

n.r.e., cert. denied, 380 U.S. 962, 85 S.Ct. 1105, 14 L.Ed.2d 153 (1964). Even the announcement of a projected public improvement together with preparation of plans and maps showing the property in question within the limits of the project, without any interference with the land owner's use, does not constitute a present taking. *Thurow v. City of Dallas,* supra; *City of Houston v. Biggers,* supra. Plaintiff's "unitary project" argument is without merit. Plaintiff admits that this case presents a point of first impression to the extent that he seeks compensation for a present diminution in the market value of his property allegedly caused by the prospects that defendants will, in the foreseeable future, implement existing formalized public improvement plans. Plaintiff argues, however, that existing Texas authority supports his theory of recovery. We do not agree.

In an inverse condemnation suit the complainant's land must be actually taken or damaged within the meaning of the Texas Constitution. A decrease in the market value of lands caused by the prospects of a governmental agency's future implementation of a public works plan that may or may not require condemnation proceedings when the plan is so implemented does not constitute a present taking. Such a decrease in the market value of land is often referred to as noncompensable consequential damage that is incident to ownership in land. *Thurow v. City of Dallas,* supra; *City of Houston v. Biggers;* supra. In this case even assuming that the completion of such projects is so reasonably probable within the foreseeable future that they are having a present impact upon the market value of plaintiff's land, the diminution in market value is at this time no more than a noncompensable consequential damage.

We have determined that plaintiff's cause of action, if any, for a partial taking must be confined to the effects on his land caused by the defendants' completed projects. Where an easement strip has been taken, as plaintiff alleges, the measure of damages is the difference in the market value of the easement strip taken and the remainder before and after the taking. *White v. Natural Gas Pipeline Company of America,* 444 S.W.2d 298, 301 (Tex.Sup. 1969); *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194 (1936). Severance damages to the remainder when a portion of the land has been taken, include all damages, present and prospective that are the natural necessary or reasonable incident of the public improvement. *City of Pearland v. Alexander,* 483 S.W.2d 244, 246 (Tex.Sup.1972).

Plaintiff, however, has not alleged that the present increase in surface waters upon his land has resulted in the diminution of the market value. Plaintiff admits that the decrease in market value resulting from the current overflows is immeasurable and only if consideration be given to the alleged effects of the completion of the entire drainage project will there be an ascertainable decrease in the market value of the portion of the land allegedly taken by the entire project and the resulting damage to the remainder. Likewise, plaintiff has not alleged that the remainder of his land has in any way been damaged by the completed drainage projects. He admits that the decrease in market value that he presently alleges is due to the cost of cure that will be necessitated only by the completion of the entire drainage plan, both completed and future projects. Evidence of the decrease in market value caused by the prospects of the completion of the entire drainage project is not related to the completed projects, and, as an evidentiary matter, too remote and speculative to be admissible on the issue of the decrease in market value, if any, caused by the completed projects.

We conclude that the trial court properly granted defendants' special exceptions insofar as they related to the implementation of future plans causing a present taking of plaintiff's property. The trial court, therefore, correctly sustained defendants' special exceptions directed to: 1) the total acreage allegedly presently taken; 2) the decrease in market value of the portion of land allegedly taken; and 3) the resulting damages to the remainder because such allegations included the effects of both the completed projects and the future projects.

Plaintiff, in open court, refused to amend his petition to include facts which would show the acreage of the land presently taken by completed projects, the decrease in market value of the land presently taken due to the completed projects, and the decrease in market value to the remainder of his land caused by the completed projects. There remained in his petition no facts to support a present cause of action for an unconstitutional taking. There remained only the bare allegation that the completion of the defendants' projects had presently resulted in an increase in the flow of surface water in excess of the natural drainage easement, and that this overflow constituted a present taking of an easement strip. Plaintiff's remaining allegations contained in plaintiff's petition after the trial court sustained the defendants' special exceptions were legal conclusions supported by no facts.

Rule 45(b) provides that a legal conclusion may be pled provided the opposing party is not misled thereby. *Paxton v. Spencer,* 503 S.W.2d 637, 641 (Tex.Civ.App. —Corpus Christi 1973, no writ); *Texas Employer's Insurance Association v. Price,* 336 S.W.2d 304 (Tex.Civ.App.—Eastland 1960, no writ); *Hankey v. Employers' Casualty Co.,* 176 S.W.2d 357 (Tex.Civ.App.—Galveston 1943, no writ). Here, the remaining allegations in plaintiff's petition are misleading because they do not sufficiently appraise the defendants of the facts upon which plaintiff intends to rely to support any remaining cause of action for a present partial taking based solely on the defendants' completed projects. We hold that no abuse of discretion has been shown by the trial court's dismissal with prejudice of plaintiff's case after plaintiff was given an opportunity to amend his petition and his refusal to amend to allege facts concerning the effects of the defendants' completed projects. Plaintiff's points of error one through six are overruled.

In point of error seven, plaintiff complains that the trial court erred in sustaining the City's special exception to the effect that plaintiff stated a cause of action for a damaging, not a partial taking, and therefore, the two-year statute of limitations applied to plaintiff's claim.

Since compensation must be paid when property is taken, destroyed or damaged, it has been often said that the distinction between an appropriation and damage without any appropriation is no longer important on the question of liability to pay compensation. *Brazos River Authority v. City of Graham,* 163 Tex. 167, 354 S.W.2d 99 (1961); *McCammon & Lang Lumber Co. v. Trinity & B. V. Railway Co.,* 133 S.W.2d 247 (Tex.Sup.1911); *Trinity & S. Railway Co. v. Schofield,* 72 Tex. 496, 10 S.W. 575 (1889); *Ansley v. Tarrant County Water Control and Improvement District No. One,* 498 S.W.2d 469 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.). The distinction is important however where questions relating to the appropriate statutes of limitation are involved. In the case of a "taking" of property, plaintiff's right to maintain a cause of action would not be barred, if ever, until the expiration of the ten-year period necessary to acquire land by adverse possession under Article 5510, Tex.Rev.Civ.Stat. Ann. (1964). However, in the case of a "damaging" of property, plaintiff's cause of action would be governed by the two-year statute of limitation under Article 5526, Tex.Rev.Civ.Stat.Ann. (1964). *Brazos River Authority v. City of Graham,* supra; *Messer v. County of Refugio,* 435 S.W.2d 220 (Tex. Civ.App.—Corpus Christi 1968, writ ref'd n.r.e.); *Tarrant County Water Control & Improvement District No. 1 v. Reid,* 203 S.W.2d 290 (Tex.Civ.App.—Fort Worth 1947, writ ref'd n. r. e.); *Tarrant County Water Control and Improvement Dist. No. 1 v. Fowler,* 175 S.W.2d 694 (Tex.Civ.App.— Dallas 1943, writ ref'd w.o.m.).

Ordinarily a plea of limitations is a matter of an affirmative defense. See Rule 94, Texas Rules of Civil Procedure. However, when a pleading affirmatively states facts which demonstrate that the suit is barred, an exception may be used to test the pleadings. *Mueller v. Banks,* 317 S.W.2d 254 (Tex.Civ.App.—San Antonio 1958, no writ); 1 McDonald, Texas Civil

Practice, Section 7.19 (1971). It is upon this principle that defendant City contends that plaintiff's petition states a cause of action for a damaging only, and therefore the trial court correctly ordered all allegations stricken that complained of acts by the City which occurred prior to two years before the filing of plaintiff's original petition on November 21, 1974.

The distinction between a taking of land and a damaging of land is often largely an evidentiary matter. A single pleading will often be sufficient to state a cause of action for either a taking or a damaging. See *Brazos River Authority v. City of Graham,* supra; *City of Perryton v. Houston,* 454 S.W.2d 435 (Tex.Civ.App.—Eastland 1970, writ ref'd n.r.e.). The repetitious nature of the physical invasion and whether the invasion was contemplated or foreseeable at the time the improvements were constructed appear to be major distinguishing factors in a determination of whether there has been a damaging or a taking within the meaning of the Constitution when the actual public works project has not been completed on the land in question but otherwise affects the land. See *Brazos River Authority v. City of Graham,* compare *Tarrant County Water Control and Improvement Dist. No. 1 v. Fowler,* supra, with *Nueces County Drainage and Conservation Dist. No. 2 v. Bevly,* 519 S.W.2d 938 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.) and *Tarrant County Water Control & Improvement Dist. No. 1 v. Reid,* 203 S.W.2d 290 (Tex.Civ.App.—Fort Worth 1947, writ ref'd n.r.e.). The Supreme Court in *City of Houston v. Renault, Inc.,* 431 S.W.2d 322 (Tex.Sup.1968) has outlined the common law liability for intentionally causing the surface waters to invade the land of another. Liability in this instance depends upon whether the damage to the land was caused by an unreasonable invasion. *City of Houston v. Renault,* supra at 324–325.

Plaintiff's allegations demonstrate the following characteristics of a damaging: 1) the public improvements occurred at a distance from the property; 2) no part of the improvements have, or will be, constructed on plaintiff's property; 3) plaintiff's property has a natural drainage way across it which carries surface waters from higher properties and which is already subject to natural overflows; 4) the improvements constructed elsewhere by the defendants cause occasional higher overflows from the natural drainage way; 5) the completion of future projects will increase these overflows; 6) the combined effects of both present and future projects will reach only a portion of plaintiff's property and in the future might require curative action; and 7) finally, the record shows that the plaintiff purchased the property after the first phase of the drainage project had been completed by the defendants. See *Nueces County Drainage and Conservation Dist. No. 2 v. Bevly,* supra, and authorities cited therein; *Tarrant County Water Control & Improvement Dist. No. 1 v. Reid,* supra, and authorities cited therein.

A cause of action for a damaging accrues at the time the land is actually damaged. Consequently, a cause of action will not lie for anticipated future damages which have not yet occurred. See e. g., *Thurow v. City of Dallas,* supra. When only those portions of plaintiff's allegations relating to the effect of the completed projects is considered, the trial court could have reasonably concluded that plaintiff's petition alleged only facts supporting a cause of action for a present damaging and anticipated damaging in the future.

The judgment of the trial court is AFFIRMED.