

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

March 13, 1997

The Honorable Gonzalo Barrientos
Chair, Committee on Legislative and
  Congressional Redistricting
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. DM-436

Re: Whether state may operate an airport for the use of state aircraft and condemn land for that purpose (RQ-927)

Dear Senator Barrientos:

You ask a number of questions directed at learning whether the state may acquire and operate Robert Mueller Municipal Airport in Austin.[1] We understand that you are interested in the operation of the airport for the use of state aircraft only and are not asking whether the state may operate an airport for non-state aircraft. We note at the threshold that any applicable federal laws must be considered in connection with the proposed acquisition.[2] You first ask whether there is any constitutional or statutory authority that allows or prohibits state ownership and operation of an airport.

We find no constitutional or statutory authority that prohibits state ownership and operation of an airport, and section 21.101 of the Transportation Code in fact contemplates that a state agency might have authority to establish an airport. This provision states as follows:

> (a) The department [of Transportation] may loan or grant money to a state agency with a governing board authorized to operate an airport or to a governmental entity in this state to establish, construct, reconstruct, enlarge, or repair an airport, airstrip, or air navigational facility if:

---

[1]The City of Austin plans to relocate its airport from Robert Mueller Municipal Airport to the former site of Bergstrom Air Force Base.

[2]If the state does acquire Robert Mueller Airport, you also wish to know how the state might be legally bound to prohibit the use of that airport by commercial passenger and freight airlines. Since you do not give any additional information about this general topic, we are unable to address it, except to note the possible relevancy of federal law. *See generally City of Dallas v. Southwest Airlines Co.*, 371 F. Supp. 1015, 1026 (N.D. Tex. 1973), *aff'd* 494 F.2d 773 (5th Cir. 1974) (Love Field, as recipient of federal funds, is subject to certain federal provisions). This question, as well as any other issue of federal law that may be relevant, is beyond the scope of this opinion.

(1) the money has been appropriated to the department for that purpose; and

(2) providing the money will:

(A)   best serve the public interest; and

(B)   best discharge the governmental aeronautics function of the state or its political subdivisions.[3]

You next ask whether specific statutory authority is necessary for either the General Services Commission or the Aircraft Pooling Board to own and operate an airport, and whether such authority currently exists. Chapter 22 of the Transportation Code gives cities and counties specific and detailed authority to establish and operate public airports,[4] but we do not believe such comprehensive statutory authority is necessary for a state agency to own and operate an airport for the use of state aircraft. A prior opinion of this office concluded that the Parks and Wildlife Department was responsible for maintaining airports built in state parks.[5] The Aircraft Pooling Board is required to "operate a pool for the custody, control, operation, and maintenance of all aircraft owned or leased by the state."[6] Moreover,

> The board may acquire appropriate facilities for the accommodation of all aircraft owned or leased by the state. The facilities may be purchased or leased as determined by the board to be most economical for the state and as provided by legislative appropriations. The facilities may include adequate hangar space, an indoor passenger waiting area, a flight-planning area, communications facilities, and other related and necessary facilities.[7]

This is a close question, but we believe that the Aircraft Pooling Board's authority to acquire "appropriate facilities" for the accommodation of state aircraft includes authority to acquire an airport

---

[3] Transp. Code § 21.101; *see id.* §§ 21.112 (expenditure of money granted by department in accord with its rules), .114 (department is agent of state and each political subdivision of state for purpose of applying for, receiving, and disbursing federal funds for benefit of general aviation airport under federal law).

[4] *See id.* § 22.020(b)(1).

[5] Attorney General Opinion H-1239 (1978). This opinion did not address the Parks and Wildlife Department's authority to operate an airport.

[6] Gov't Code § 2205.032(a).

[7] *Id.* § 2205.034(a) (emphasis added).

for the use of aircraft owned or leased by the state.[8] The adoption of legislation expressly authorizing the board to own and operate an airport for the use of state aircraft would remove any doubt about the board's authority.

You ask several questions about the condemnation of land for an airport. The state has the right to appropriate property for a public use, subject to the property owner's right to adequate compensation.[9] Article I, section 17 of the Texas Constitution provides that "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . ."

You ask whether either the Aircraft Pooling Board or the General Services Commission may initiate condemnation proceedings on its own authority. The power of eminent domain must be conferred by the legislature, either expressly or by necessary implication, and will not be gathered from doubtful inferences.[10] The Aircraft Pooling Board may purchase or lease facilities,[11] but it has no express or necessarily implied authority to initiate condemnation proceedings. The General Services Commission may exercise the power of eminent domain to obtain a building site if the legislature has authorized the particular building project.[12] Accordingly, neither agency may initiate condemnation proceedings on its own authority.

Your next questions concern section 2204.001 of the Government Code, which authorizes the governor to purchase land required by the state for public use. If the governor fails to agree with the land owner on a price, the land may be condemned for public use in the name of the state. "On the direction of the governor, condemnation proceedings shall be instituted against the owner of the land by the attorney general or the district or county attorney acting under the direction of the attorney general."[13] You inquire about the legal standard for deciding that a given piece of land is required by the state for a specific public use. The decision as to the particular land to be condemned is within the condemnor's absolute discretion, and the courts will not review the condemnor's

---

[8]The General Services Commission has authority as to building construction, *id.* § 2166.002, defined to include the construction of "a building, structure, or appurtenant facility or utility, including the acquisition and installation of original equipment and original furnishings," *id.* § 2166.001(4)(A). We do not believe that the commission has authority to own or operate an airport.

[9]*Texas Highway Dep't v. Weber*, 219 S.W.2d 70 (Tex. 1949); Attorney General Opinion O-3307 (1941).

[10]*Coastal States Gas Producing Co. v. Pate*, 309 S.W.2d 828, 831 (Tex. 1958).

[11]Gov't Code § 2205.035.

[12]*Id.* §§ 2166.055, .251; *see also id.* § 2166.002.

[13]*Id.* § 2204.001(b); *see generally* Attorney General Opinions WW-633 (1959), WW-526 (1958), WW-119 (1957), O-3307 (1941) at 5 (construing former V.T.C.S. art. 5240, now Gov't Code § 2204.001).

discretion in this respect, except where the condemnor has acted in bad faith or arbitrarily, capriciously, or fraudulently.[14]

You inquire whether inverse condemnation case law indicates that alternative sites for the proposed public purpose need to be evaluated. Inverse condemnation case law does not address your question,[15] but to prevent questions concerning the selection of a site, it would be advisable for the Aircraft Pooling Board to give appropriate notices of a site selection, that all alternatives be discussed, and that the request for condemnation to the governor recite the basis of the request.

You ask two questions that we will address together: whether legislative authorization is required prior to action by the governor under section 2204.001, and whether a legislative appropriation to the Aircraft Pooling Board or the General Services Commission would provide sufficient authority for either agency to own and operate an airport or for the governor to initiate condemnation proceedings under section 2204.001 of the Government Code.

Legislative action is required prior to action by the governor pursuant to section 2204.001 of the Government Code. A legislative appropriation must be available to pay for the land, but the legislature may not appropriate money from the treasury unless preexisting law authorizes the expenditure.[16] Thus, an appropriation for the purpose of acquiring and/or operating an airport may be made only to an agency that has express or implied statutory authority to own and/or operate an airport. We have already decided that the Aircraft Pooling Board has implied authority to own and operate an airport for the use of state aircraft. Accordingly, if the legislature appropriated funds to the board to acquire an airport, the board could either purchase or lease the airport itself or request the governor to purchase the land or to initiate condemnation proceedings under section 2204.001 of the Government Code. Since the General Services Commission lacks authority to own or operate an airport, the legislature may not appropriate funds to the commission for that purpose.

You ask whether the legislature may authorize the owner of land proposed for state acquisition to impose a restrictive covenant[17] on the use of the property with a reversionary clause to the owner, even if the owner contests the property acquisition through the courts. Assuming that

---

[14]*Valero Eastex Pipeline Co. v. Jarvis*, 926 S.W.2d 789 (Tex. App.--Tyler 1996, writ requested).

[15]When property has been taken for public use without proper condemnation proceedings, the property owner may bring an inverse condemnation suit in attempt to recover compensation for the taking. *Hubler v. Corpus Christi*, 564 S.W.2d 816, 820 (Tex. Civ. App.--Corpus Christi 1978, writ ref'd n.r.e.); *see generally Felts v. Harris County*, 915 SW.2d 482, 484 (Tex. 1996); *State v. Biggar*, 873 S.W.2d 11, 13 (Tex. 1994).

[16]Tex. Const. art. III, § 44; *Austin Nat'l Bank v. Sheppard*, 71 S.W.2d 242 (Tex. 1934); Attorney General Opinion H-944 (1977).

[17]You do not describe the restrictive covenant, but we will assume for purposes of this opinion that it is consistent with applicable law.

such conditions may be applied to land taken under the eminent domain power,[18] you also ask whether the legislature may do so by statute or by rider language attached to an appropriation.

Under some circumstances, the state may condemn less that the full fee simple title to land, for example, a limited easement[19] or a temporary construction easement.[20] It appears, however, that you refer to the acquisition of the fee, subject to the possibility that it will revert to the landowner at an undetermined time in the future if the restrictive covenant is violated. Although reservations of property rights in the landowner are valid as limited easements, "[m]ere promissory statements or declarations of future intentions by a condemnor are invalid."[21] The courts hold that the effect of a condemnor's promissory statements regarding its future intentions is to prevent a landowner from recovering all his damages in a single proceeding.[22] The landowner is entitled to compensation in money at the time of taking, and is not required to accept the condemnor's promise to pay or act in the future.[23] Otherwise, he or she might be burdened with the delay and expense of future lawsuits to compel the condemnor's performance.[24] A reversionary right that may become effective at some indeterminate time appears to be a promise to act in the future, not a limitation on the property interest acquired by the state. Such a promise would not prevent the landowner from receiving the full value of the land as compensation or the state from acquiring the full fee simple title to the land. Once the state held fee simple title to the land, it could not transfer it to the former owner without

---

[18]Reversionary clauses are typically found in deeds of conveyance, not in the description of the lands taken under the power of eminent domain. *See* Attorney General Opinions JM-675 (1987) (discussing restrictions on use on land conveyed to state), JM-242 (1984) (university conveyance of land to hospital district for hospital purposes).

[19]*Coastal Indus. Water v. Celanese Corp.*, 592 S.W.2d 597, 601 (Tex. 1979) (condemnor may not wish to use easement to its full legal extent or may intend to create specific proprietary right in landowner).

[20]*See Valero*, 926 S.W.2d at 789; *Perdue v. City of Azle*, 586 S.W.2d 179 (Tex. Civ. App.--Fort Worth 1979, writ ref'd n.r.e.).

[21]*White v. Natural Gas Pipeline Co. v. America*, 444 S.W.2d 298, 300 (Tex. 1969). A provision giving the landowner the exclusive right to mine for gravel up to a certain date constituted a reservation of a proprietary right in the landowner. *Id.* at 301.

[22]*Valero*, 926 S.W.2d at 793; *Coastal Indus. Water.*, 592 S.W.2d at 601; *White*, 444 S.W.2d at 300.

[23]*White*, 444 S.W.2d at 301.

[24]*Valero*, 926 S.W.2d at 793; *White*, 444 S.W.2d at 300.

consideration but could only dispose of it for adequate consideration[25] pursuant to legislative authorization.[26]

Since we have considerable doubt that such a condition may be validly attached to condemned property, we need not consider whether it may be imposed by statute or appropriation, except to reiterate that a state agency may dispose of state-owned land only pursuant to legislative authority.

You ask whether current law allows the state to be held liable for damages that result to private property owners as a result of operations at a state-owned facility. We answer your question in general terms. Specific instances of property damage must be addressed on a case-by-case basis, in light of all the relevant facts and circumstances, and for these reasons, cannot be resolved in an attorney general opinion.

Because article I, section 17 of the Texas Constitution provides that property shall not be *damaged* or destroyed for public use without adequate compensation, an actual taking or physical appropriation of property is not required for a property owner to receive compensation.[27] Issues of damage to property have been raised in inverse condemnation suits. Where property is damaged rather than taken, article I, section 17 of the Texas Constitution allows recovery only if the injury is not one suffered by the community in general.[28]

A litigant may recover under article I, section 17 of the Texas Constitution by establishing a nuisance.[29] Recovery under this provision is not allowed where the damage in connection with a public structure was based on some act of negligence such as the negligent acts of an employee.[30] The Texas Supreme Court has stated that the test is whether "the State intentionally perform[ed] certain acts in the exercise of its lawful authority . . . for public use which resulted in the taking or

---

[25]Tex. Const. art. III, § 51; Attorney General Opinion H-472 (1974); *see also Pasadena Police Officers Ass 'n v. City of Pasadena*, 497 S.W.2d 388 (Tex. Civ. App.--Houston [1st Dist.] 1973, writ ref'd n.r.e.).

[26]*See Lorino v. Crawford Packing Co.*, 175 S.W.2d 410, 414 (Tex. 1943); *Conley v. Daughters of the Republic*, 156 S.W. 197, 200 (Tex. 1913); Attorney General Opinions JM-391 (1985); MW-62 (1979); Letter Opinion No. 96-106 (1996).

[27]*Felts*, 915 S.W.2d at 484; *Biggar*, 873 S.W.2d at 13.

[28]*Felts*, 915 S.W.2d at 484 (inverse condemnation action based on increased highway noise).

[29]*Shade v. City of Dallas*, 819 S.W.2d 578, 583 (Tex. App.--Dallas 1991, no writ) (quoting *City of Abilene v. Downs*, 367 S.W.2d 153, 159 (Tex. 1963)).

[30]*Shade*, 819 S.W.2d at 583 (quoting *Ivey v. City of Temple*, 415 S.W.2d 542, 543 (Tex. Civ. App.--Austin 1967, writ ref'd n.r.e.)).

damaging of plaintiffs' property, and which acts were the proximate cause of the taking or damaging of such property."[31]

Liability in tort for property damage exists only in extremely limited circumstances pursuant to the Texas Tort Claims Act, that is, if "the property damage . . . arises from the operation or use of a motor-driven vehicle or motor-driven equipment" and the employee would be personally liable to the claimant under Texas law.[32]

You next state that current law exempts property at municipal airports from taxation, including leased facilities,[33] but allows property taxation of facilities privately owned which, though leased, operate on state property. You ask whether private facilities built on a state airport would be exempt from local property taxes.

Article VIII, section 1 of the Texas Constitution provides that all real property in the state, "unless exempt as required or permitted by this Constitution," shall be taxed in proportion to its value. Article VIII, section 2(a) of the Texas Constitution provides that the "legislature may, by general laws, exempt from taxation public property used for public purposes." Section 11.11 of the Tax Code provides the following tax exemption for state property used for public purposes:

> (a) Except as provided by Subsections (b) and (c) of this section, property owned by this state or a political subdivision of this state is exempt from taxation if the property is used for public purposes.
>
> (b) [Land owned by the Permanent University Fund]. . . .
>
> (c) [Agricultural or grazing land owned by a county for the benefit of public schools under Article VII, section 6, of the Texas Constitution] . . . .
>
> (d) Property owned by the state that is not used for public purposes is taxable. Property owned by a state agency or institution is not used for public purposes if the property is rented or leased for compensation to a private business enterprise to be used by it for a purpose not related to the performance of the duties and functions of the state agency or institution.

---

[31]*Shade*, 819 S.W.2d at 583 (quoting *State v. Hale*, 146 S.W.2d 731, 736 (Tex. 1941)).

[32]Civ. Prac. & Rem. Code § 101.021(1)(A).

[33]Not all leased facilities at municipal airports are exempt from ad valorem taxation. Attorney General Opinions DM-188 and JM-464 address the taxation of real property located at a municipal airport and leased to a private entity, discussing the circumstances under which such property may be exempt from ad valorem tax. Attorney General Opinions DM-188 (1992), JM-464 (1986).

The test for public purpose is whether the public property is used primarily for the health, comfort, and welfare of the public.[34] In addition, it must be shown that the property is held only for public purposes and is devoted exclusively to the use and benefit of the public.[35] The lease of publicly-owned property to private individuals for their own commercial purposes generally means that the property is not used for a public purpose and is therefore not entitled to the tax exemption.[36] However, the fact that public property produces revenues does not prevent it from receiving the tax exemption, if the property is used for a public purpose, so that some portion of the public has a right to use it under proper regulations and the revenue inures to the public benefit of the governmental entity.[37]

Two prior opinions of this office considered whether a city was exempt from ad valorem tax on airport property leased to private entities.[38] These opinions address municipal airports used by commercial airlines, but the standards they establish are relevant to your question. Attorney General Opinion JM-464 concluded that a portion of the airport leased to an individual who operated an aircraft fueling facility was exempt from ad valorem taxation, while land surrounding the airport that was leased for private commercial and agricultural purposes was not tax exempt. Attorney General Opinion DM-188 construed Attorney General Opinion JM-464 "to require a showing that the use of municipal airport property is in direct support of the city's operation of the airport."[39] Thus, a leased city-owned aircraft maintenance hangar would be tax exempt if it was intended for use in the safe and efficient operation of a municipal airport. However, if most of the aircraft stored and serviced there were brought in solely for the purposes of maintenance and storage and not used to transport passengers and cargo to and from the airport, the facility would not be used exclusively in support of the city's operation of the airport, but instead to serve the private commercial interests of the lessee.[40] We cannot determine in an attorney general opinion whether particular airport facilities operated under lease by a private entity are used in direct support of the operation of the airport and are therefore tax except, because the answer to such questions requires the resolution of fact questions.

---

[34]*A&M Consol. Ind. Sch. Dist. v. City of Bryan,* 184 S.W.2d 914 (Tex. 1945); Attorney General Opinion DM-188 (1992) at 3.

[35]*Satterlee v. Gulf Coast Waste Disposal Auth.,* 576 S.W.2d 773, 778-79 (Tex. 1978); Attorney General Opinion DM-188 (1992) at 3.

[36]*Grand Prairie Hosp. Auth. v. Dallas County Appraisal Dist.,* 730 S.W.2d 849, 851 (Tex. App.--Dallas 1987, writ ref'd n.r.e.); *see* Attorney General Opinions DM-188 (1992) at 3, DM-78 (1992) at 3.

[37]*Lower Colorado River Auth. v. Chemical Bank & Trust Co.,* 190 S.W.2d 48 (Tex. 1945); *State v. Houston Lighting & Power Co.,* 609 S.W.2d 263, 268-69 (Tex. Civ. App.--Corpus Christi 1980, writ ref'd n.r.e.).

[38]Attorney General Opinions DM-188 (1992), JM-464 (1986).

[39]Attorney General Opinion DM-188 (1992) at 5.

[40]*Id.*

## S U M M A R Y

The Aircraft Pooling Board is authorized to own and operate an airport for the use of state aircraft. Neither the Aircraft Pooling Board nor the General Services Commission may initiate condemnation proceedings on its own authority. An appropriation for the purpose of acquiring and/or operating an airport may be made only to an agency with express or implied statutory authority to own and/or operate an airport. If the legislature appropriates funds to the Aircraft Pooling Board to acquire an airport for the use of state aircraft, the board could purchase or lease the airport itself or request the governor to purchase the land or initiate condemnation proceedings under section 2204.001 of the Government Code. The decision as to the particular land to be condemned is within the condemnor's absolute discretion, reviewable by the courts only when the condemnor has acted in bad faith or arbitrarily, capriciously, or fraudulently. The legislature probably could not authorize the owner of land proposed for state acquisition to impose a restrictive covenant on the use of the property with a reversionary clause to the owner.

Whether the state may be held liable under article I, section 17 of the Texas Constitution or under the Tort Claims Act for damages that result to private property owners as a result of operations at a state-owned facility must be determined on a case-by-case basis.

Airport property leased by the state to a private entity may be exempt from ad valorem tax if its use is in direct support of the state's operation of the airport. Whether a particular leased facility is exempt from tax depends upon the resolution of fact questions.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General