CONLEY et al. v. DAUGHTERS OF THE REPUBLIC.

(Supreme Court of Texas.    April 30, 1913.)

1. CONSTITUTIONAL LAW (§ 26*)—POWER OF LEGISLATURE.

The state Legislature has all governmental powers residing in the people, except as limited by the state and federal Constitutions.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 30; Dec. Dig. § 26.*]

2. STATES (§ 88*)—POWERS—ACQUISITION OF REALTY.

Since the state has the same power to contract as a corporation or individual, including the power to acquire property by conveyance,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

etc., and dispose of it, the state had the power to acquire title to the Alamo property, and place it in the custody of the Daughters of the Republic of Texas, a corporation, as it did by Act Jan. 26, 1905 (Acts 29th Leg. c. 7).

[Ed. Note.—For other cases, see States, Dec. Dig. § 88.*]

3. OFFICERS (§ 1*)—DEFINITION.

An "officer" is one who exercises some functions of government.

[Ed. Note.—For other cases, see Officers, Cent. Dig. §§ 1, 4; Dec. Dig. § 1.*,

For other definitions, see Words and Phrases, vol. 6, pp. 4933–4951; vol. 8, p. 7737.]

4. STATES (§ 88*)—PROPERTY—TRUSTEE FOR STATE.

The Daughters of the Republic of Texas by accepting the terms of Act Jan. 26, 1905 (Acts 29th Leg. c. 7), providing for the acquisition of the Alamo Mission and property by the state, and the placing of it in the custody of that corporation, became the trustee of the property for the state.

[Ed. Note.—For other cases, see States, Dec. Dig. § 88.*]

5. CORPORATIONS (§ 381*)—TRUSTEES — WHO MAY ACT.

A corporation may act as a trustee for any purpose within the scope of its charter or the governing statute.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1541; Dec. Dig. § 381.*]

6. TRUSTS (§ 21*)—EXPRESS TRUSTS.

To constitute a direct trust, there must be a transfer to one capable of holding the property, or some object or fund, and also a cestui que trust or purpose to which the fund is to be applied.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 29, 30; Dec. Dig. § 21.*]

7. STATUTES (§ 119*)—SUBJECT AND TITLE— STATES.

Act Jan. 26, 1905 (Acts 29th Leg. c. 7), is entitled "An act to provide for the purchase and conveyance to the state of the land in the city of San Antonio known as the Hugo & Schmeltzer Co. property which was a part of the Alamo Mission and for the care and preservation of said property and of the Alamo church property now owned by the state, and appropriating the sum of $65,000 to carry out the provisions of this act," and the body of the act provided for the purchase of such property and for an appropriation of the sum named for payment therefor, and further provided that, upon receipt of the title, the Governor should deliver the property to the custody of the Daughters of the Republic of Texas, to be maintained by them in good repair without charge to the state, and that no alterations should be made in the Alamo church as it stood except such as were necessary to preserve it. *Held*, that the act did not violate Const. art. 3, § 35, prohibiting any bill from containing more than one subject, which shall be expressed in its title.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 164–167; Dec. Dig. § 119.*]

8. CORPORATIONS (§ 14*)—PURPOSE OF FORMATION—"EDUCATIONAL PURPOSE"—"EDUCATION."

The Daughters of the Republic of Texas which was organized as a corporation for the declared purpose of perpetuating the memory and spirit of the men who achieved Texan independence, and to encourage historical research into the early history of Texas, and promote the celebration of Independence Day of the Texas Republic, and erect monuments upon places made historic in the war for Texan independence, was a corporation organized

for "educational" purposes within Rev. Civ. St. 1911, art. 1121, permitting private corporations to be formed for educational purposes, "education" in the statutory sense meaning not merely instruction received at school, but the whole course of training, both moral, intellectual, and physical.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 16; Dec. Dig. § 14.*

For other definitions, see Words and Phrases, vol. 3, pp. 2316–2318; vol. 8, p. 7647.]

9. STATES (§ 88*)—REPEAL—IMPLIED REPEAL.

The Appropriation Bill of 1911 (Acts 32d Leg. [1st Called Sess.] c. 3), making an appropriation for the improvement of the Alamo property belonging to the state to be expended under the direction of the superintendent of public buildings and grounds upon the Governor's approval, did not impliedly repeal Act Jan. 26, 1905 (Acts 29th Leg. c. 7), placing such property in the custody of the Daughters of the Republic of Texas, and requiring them to repair it without expense to the state.

[Ed. Note.—For other cases, see States, Dec. Dig. § 88.*]

10. STATUTES (§ 158*)—REPEAL — REPEAL BY IMPLICATION.

Repeals by implication are not favored.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 228; Dec. Dig. § 158.*]

11. STATUTES (§ 159*) — REPEAL — RELATED STATUTES.

Statutes which relate to the same subject should be considered as if incorporated in one act and construed together, if possible, so as to give effect to each, in which case one does not impliedly repeal the other.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 229; Dec. Dig. § 159.*]

12. STATUTES (§ 225*)—CONSTRUCTION — RELATED STATUTES.

Statutes which are in pari materia should be construed together so as to give effect to each, if possible.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 302, 303; Dec. Dig. § 225.*]

13. INJUNCTION (§ 46*)—RIGHT OF ACTION.

The entry upon the Alamo Mission property by the state superintendent of public buildings and grounds pursuant to the Governor's direction to have repairs made as expressly authorized by the appropriation bill of 1911 (Acts 32d Leg. [1st Called Sess.] c. 3), appropriating $5,000 for repairs to be made under the superintendent's direction, did not interfere with the possession of the Daughters of the Republic of Texas under Act Jan. 26, 1905 (Acts 29th Leg. c. 7), giving the property into their custody, so that that corporation could not enjoin such entry by the superintendent.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 98, 99, 107; Dec. Dig. § 46.*]

14. STATUTES (§ 119*)—SUBJECTS AND TITLES —APPROPRIATION STATUTES.

Under the express exception of appropriation bills in Const. art. 3, § 35, relating to subjects and titles of acts, a separate statute is not necessary to direct and control the expenditure of every item of the general appropriation for state purposes.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 164–167; Dec. Dig. § 119.*]

15. STATES (§ 191*)—SUITS AGAINST STATES.

A suit by the Daughters of the Republic of Texas against the superintendent of public buildings and grounds of the state to enjoin defendant from entering upon the Alamo property on the ground that it was given to the custody of plaintiff corporation by Act Jan. 26,

---

1905 (Acts 29th Leg. c. 7), is not an action against the state so as to be prohibited, being merely an action against defendant charging him with violating a statute, and interfering with plaintiff's property.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 179–184; Dec. Dig. § 191.*]

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by the Daughters of the Republic against A. B. Conley and others. Judgment for plaintiff in the Court of Civil Appeals (151 S. W. 877), and defendants bring error. Reversed, and injunction granted dissolved.

J. F. Carl, of San Antonio, B. F. Looney, Atty. Gen., and C. M. Cureton, Asst. Atty. Gen., for plaintiffs in error. Denman, Franklin & McGown and Webb & Goethe, all of San Antonio, and Williams & Stedman, of Austin, for defendant in error.

BROWN, C. J. The plaintiff in error A. B. Conley is the superintendent of public buildings and grounds of the state of Texas. The defendant in error is a private corporation created under the second subdivision of article 1121 of the Revised Statutes of 1911, which reads as follows:

"Sec. 1121. The purposes for which private corporations may be formed are: * * * (2) The support of any benevolent, charitable, educational or missionary undertaking."

The charter of the corporation was prepared and filed in accord with the requirements of the law and expressed the purposes of the corporation thus:

"1st. To perpetuate the memory and spirit of the men and women who have achieved and maintained the independence of Texas.

"2nd. To encourage historical research into the earliest records of Texas, especially those relating to the revolution of 1835 and the events which followed; to foster the preservation of documents and relics and to encourage the publication of records of individual service of soldiers and patriots of the Republic.

"3rd. To promote the celebration of March 2nd (Independence day) and April 21st (San Jacinto day); to secure and hallow historic spots by erecting monuments thereon, and to cherish and preserve unity of Texas as achieved and established by the fathers and mothers of the Texas Revolution.

"This Association may have and hold by purchase, grant, gift or otherwise real estate on which battles for the independence of Texas were fought; such monument or monuments as may be erected thereon and burial grounds where the dead who fought and died for Texas independence are buried; and personal property consisting of books, manuscripts and other historical records relating to the early history of Texas, and relics."

A statute (Acts 29th Leg. c. 7) enacted by the Legislature of the state became a law in full force January 26, 1905. The first sec-

tion of that act provided for the purchase of certain property in the city of San Antonio described thus: "All the land in the city of San Antonio, Texas, known as the Hugo & Schmeltzer Company property, formerly a part of the old Alamo Mission and adjoining the Alamo church property now owned by the state," giving the metes and bounds of that to be purchased. The second section of the act limited the price to be paid and provided for payment and appropriated $65,000.-00 to pay the same. The third section reads: "Upon the receipt of the title to said land, the Governor shall deliver the property thus acquired, together with the Alamo church property, already owned by the state, to the custody and care of the Daughters of the Republic of Texas, to be maintained by them in good order and repair, without charge to the state, as a sacred memorial to the heroes who immolated themselves upon the hallowed ground; and by the Daughters of the Republic of Texas to be maintained or remodeled upon plans adopted by the Daughters of the Republic of Texas, and approved by the Governor of Texas; provided that no changes or alterations shall be made in the Alamo church proper, as it now stands, except such as are absolutely necessary for its preservation. All of said property being subject to future legislation by the Legislature of the state of Texas." The ground was purchased and the entire property was delivered into the possession of the corporation, "the Daughters of the Republic," which held the exclusive possession and control thereof until plaintiff in error by direction of the Governor of the state entered upon said property. The corporation "maintained the property in good order," but did not remodel it nor prepare any plans therefor.

At the first called session of the Legislature in 1911 [Laws 1911 (1st Called Sess.) c. 3] the general appropriation bill was enacted, and contained this provision:

|  | For the Years Ending | |
|---|---|---|
|  | Aug. 31, 1912. | Aug. 31, 1913. |
| For the improvement of the Alamo property belonging to the state of Texas, in the city of San Antonio, to be expended under the direction of the superintendent of public buildings and grounds, upon the approval of the Governor | $5,000.00 | ......... |

Acting under the direction of the Governor, Conley entered upon the property to make improvement without a plan having been prepared by the Daughters of the Republic, and the corporation applied to the Honorable J. L. Camp, judge of the district court of the Forty-Fifth judicial district, for a writ of injunction upon the allegations stated in the findings of the court, as hereinafter copied and embraced in the charter of the corporation. The judge granted the

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

writ, and upon a hearing perpetuated the injunction, which was affirmed by the Court of Civil Appeals.

The judge of the district court filed the following findings of fact, which were adopted by the Court of Civil Appeals:

"(1) The Daughters of the Republic of Texas is a private corporation, duly incorporated under the laws of the state of Texas, for the purpose set forth and alleged in plaintiff's petition herein.

"(2) Under the act of the Legislature of the state of Texas, approved January 26, 1905, as averred in plaintiff's petition herein, the state of Texas through its Governor purchased the property known as the old Hugo & Schmeltzer building in plaintiff's petition fully described, and being a part of what is commonly known as the 'Alamo property,' and previous to such purchase, the state of Texas had acquired what is known as the 'Alamo Mission' property proper in said city of San Antonio, the two properties together constituting what is commonly known as the Alamo property in the city of San Antonio.

"(3) In accordance with the provisions of said act of the Legislature, said two properties were delivered by the state of Texas into the custody and care of plaintiff prior to any of the trespasses alleged in plaintiff's petition, and at the time of said alleged trespasses said plaintiff was in possession of said property, holding the care and custody of same under the terms of the act of the Legislature above referred to.

"(4) No plan for any changes or alterations or remodeling of any of the buildings upon said property has been made or adopted by plaintiff and approved by the Governor of the state of Texas.

"(5) No plan for any alterations or changes or remodeling of any of said buildings had been prepared by the Governor of the state of Texas and submitted to plaintiff for consideration by plaintiff.

"(6) Plaintiff has never surrendered said property nor the care or custody of same to any one, but has retained such possession, care, and custody ever since the delivery of the property to plaintiff.

"(7) The defendants in their official capacities alleged in plaintiff's petition entered upon the said property prior to the filing of plaintiff's petition, and without the consent of plaintiff were at the time of the filing of said petition engaged in tearing down certain of the improvements upon said property, making excavations thereon for rebuilding certain of the improvements thereon, and for the erection of new improvements thereon, and were rebuilding certain of the improvements thereon and remodeling certain of the improvements thereon.

"(8) This work was being done without any plan as to what future improvements would be made upon the property or what remodeling of the property would be done, the evidence showing that the work was being done without any fixed or definite plan, and the defendants were unable to inform the court what remodeling of any improvements was contemplated, nor what improvements were contemplated, nor what changes in the present buildings were contemplated by them or by the Governor of the state."

[1] It is well established that the state Legislature is clothed with all governmental power which resides in the people, subject to such limitations as may be expressed in the Constitution of the state, and any limitation embraced in the Constitution of the United States. Brown v. Galveston, 97 Tex. 1, 75 S. W. 488. Article 3, § 1, of the state Constitution provides: "The legislative power of this state shall be vested in a Senate and House of. Representatives, which together shall be styled 'The Legislature of the State of Texas.' "

[2] The power of the Legislature of this state, with reference to the property in question, is not limited by any provision of the Constitution; therefore, it has in general "the same rights and powers in respect to property as an individual. It may acquire property, real or personal, by conveyance, will, or otherwise, and hold or dispose of the same or apply it to any purpose, public or private, as it sees fit. The power of the state in respect to its property rights is vested in the Legislature, and the Legislature alone can exercise the power necessary to the enjoyment and protection of those rights, by the enactment of statutes for that purpose. * * * The state has, in general, the same power to contract as a corporation or an individual." 36 Cyc. pp. 869, 871.

[3] We are of opinion that the state, acting by its Legislature, had the authority to acquire title to the Alamo property and to place that property in the custody of the corporation, the Daughters of the Republic. But it is said that the care of the property was the act of an officer. An officer is one who exercises some functions of the government. No such authority is vested in that corporation. We do not care to discuss this question further than to say that the preparation of plans for improvement is not a function of the government, but of an architect. The service to be performed by the corporation was such as could have been committed to any person.

[4-6] We are of opinion that by the acceptance of the terms of the statute the corporation became a trustee for the state. But the question arises, Can a corporation act as trustee? "The power of a corporation to act as trustee for any purpose within the scope of its charter or governing statute * * * is entirely free from doubt." 10 Cyc. p. 1140. "To constitute a direct trust, there must be a conveyance or transfer to a person capable of holding it: there must also

be an object or fund transferred, and a cestui que trust or purpose to which the trust fund is to be applied." Commissioners v. Walker, 6 How. (Miss.) 143, 38 Am. Dec. 433. In the case cited the trustees were appointed by the state, and it was held that the action by the state was valid and created a trust in favor of the state. The state had the power by its Legislature to create the corporation and to convey the property to it; the corporation had the power to perform the duties, and there was a purpose that was public. None of the elements of an office are present; but each element of a trust exists. This constitutes the corporation a trustee of the state with power to maintain the property "in good order and repair." No title passed to the corporation, nor did any authority vest except that expressed or implied by the terms of the law.

[7] Plaintiff in error insists that the act under which the corporation claims is void because it does not comply with section 35 of article 3 of the Constitution, which reads: "No bill (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title." The caption of the act in question reads: "An act to provide for the purchase and conveyance to the state of Texas of the land in the city of San Antonio known as the Hugo & Schmeltzer Company property, which was a part of the Alamo Mission; and for the care and preservation of said property, and of the Alamo church property now owned by the state; and appropriating the sum of sixty-five thousand dollars ($65,000.00) to carry out the provisions of this act." The purpose was the acquisition of the Alamo property, and to provide for the care of it and the appropriation of a sum to purchase the property. Everything provided for in the bill is included in the subject of the bill, as expressed in the caption. The objection is not sound. Murphey v. Menard, 11 Tex. 673; Barnes v. Hardeman, 15 Tex. 366.

[8] The Attorney General asserts that the corporation was not lawfully created under the statute of this state, because the law does not authorize the creation of such corporation for the purposes named in its charter. The second subdivision of article 1121, Revised Statutes, reads: "The purposes for which private corporations may be formed are: * * * (2) The support of any benevolent, charitable, educational or missionary undertaking." The purpose of this corporation is clearly "educational." Whatever educates is within the meaning of "educational undertaking." Education in the sense as used in the statute includes: "In its broadest sense, * * * not merely the instruction received at school or college, but the whole course of training, moral, intellectual and physical; is not limited to the ordinary instruction of the child in the pursuits of literature. It comprehends a proper attention to the moral and religious sentiments of the child. And it is sometimes used as synonymous with 'learning.'" 14 Cyc. p. 1230. The sentiment of regard for the memory of those who gave their lives for the blessings of this great state stimulates patriotism, and is in the highest sense educational. The facts to be preserved furnish the means of the best education for the young men and women of this state. The purpose is laudable in its influence upon the present generation; it is laudable, educational, and benevolent for the future citizens. This question is asked: "Should a state commit its interests to corporations?" This court has naught to do with the policy of the state on that question. All litigants "look alike" here. However, we will say that this is not such a soulless corporation as needs to have a watch upon its actions. The heart, the soul, and spirit of patriotism are the capital employed by those women which would not detract from the authority and power of the state. On the contrary, those ladies, with no hope of gain to themselves, undertook to substitute for the state's fund, which would have been created by taxation, the voluntary offerings of the people—a tribute of patriotism, sanctified by love for the state, and reverence for the memory of her heroic dead. Can there be danger from such a corporation? We think not.

[9] It is also urged that the act which committed the Alamo property to the care of the Daughters of the Republic was repealed by the appropriation bill of 1911, which we again copy:

| | For the Years Ending | |
| --- | --- | --- |
| | Aug. 31, 1912. | Aug. 31, 1913. |
| For the improvement of the Alamo property belonging to the state of Texas, in the city of San Antonio, to be expended under the direction of the superintendent of public buildings and grounds, upon the approval of the Governor | $5,000.00. | ......... |

[10-12] There is no express repeal of the former law; hence, if repealed, it must be by implication, which is not favored. The two laws relate to the same subject, and should be considered as if incorporated into one act. If being so considered the two can be harmonized and effect given to each, there can be no repeal. Neill v. Keese, 5 Tex. 23, 51 Am. Dec. 746. "There statutes, being in pari materia, and relating to the same subject, are to be taken together and so construed, in reference to each other, as that if practicable, effect may be given to the entire provisions of each. * * * Thus considered, there is no repugnancy between the provisions of these statutes. They may stand together, and effect may be given to the entire provisions of each. And thus

to construe and give effect to them, is in accordance with the established rule of construction." Brown v. Chancellor, 61 Tex. 438. The first act directed the Governor to purchase the Hugo & Schmeltzer Company property and deliver it to the corporation, to be maintained in good order at its own expense. The corporation was authorized to remodel and improve the property (except the church) at its own expense, upon plans to be provided by the corporation, and to be approved by the Governor. This conferred upon the corporation the initiative as to improvements, with the power in the Governor to disapprove the plans. His authority was limited and negative. In 1911 the Legislature evidently believed that there was need for some improvement of the property. The members of the corporation had been at war among themselves, which doubtless caused the appropriation to be made in these terms: "For the improvement of the Alamo property belonging to the State of Texas in the City of San Antonio, to be expended under the direction of the Superintendent of Public Buildings and Grounds, upon the approval of the Governor." The Legislature intended that the funds of the state should be expended by its officer—that is, under the direction of the superintendent of public buildings and grounds—which implies that the superintendent should have the right to enter the buildings and grounds for the purpose of improvement. The limitations were (1) it must be done with the approval of the Governor; and (2) he could not interfere with the "old church," except to make repairs necessary to its preservation, which limitation of the statute was general and bound the Governor as well as the corporation.

[13] The entry by the plaintiff in error did not dispossess the corporation, but the duties of each might be performed at the same time, for neither the corporation nor the superintendent could improve the property without the consent of the Governor. When the $5,000 had been expended, the right of the superintendent would have expired. The execution of both laws could have been accomplished in harmony. The provision that the plans to be provided by the Daughters of the Republic for improvement should be approved by the Governor and that the expenditure of the $5,000 should be under his direction and control rendered a conflict altogether improbable, if not impossible. There was no repeal of the first act by the item in the appropriation bill.

To the argument that the direction as to expenditure of the $5,000 is unconstitutional, it is sufficient to say that from this language—"no bill (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title"—the exception relieves that bill from the limitation and permits the same treatment of each subject of the appropriation bill that would apply if it were embraced in a separate bill.

[14] It cannot be that a separate and independent law would be necessary to direct and control the expenditure of every item of appropriation.

[15] It has been insisted that this is a suit against the state; therefore not maintainable. This is not an action against the state, but against plaintiff in error, charging him with a violation of a law of the state and an invasion of plaintiff's rights. Stanley v. Schwalby, 85 Tex. 348, 19 S. W. 264; 36 Cyc. 917. The subject is treated exhaustively in the text and notes at the place cited. If the decision should be against plaintiff in error, it would not affect the state, but simply establish that he entered upon the premises and proceeded contrary to law, or without lawful authority. The petition for injunction alleged no act done by the plaintiff in error which he was not authorized by law to do under the instruction of the Governor. His entry did not interfere with the corporation in its possession, nor hinder the performance of any duty. The injunction was improperly granted. It is ordered that the injunction be dissolved, and that judgment be entered that the plaintiff, the corporation, take nothing by this suit, and that plaintiff in error go hence without day and recover of the corporation, the Daughters of the Republic, all costs of the several courts.