

# The Attorney General of Texas

November 20, 1985

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Lias B. "Bubba" Steen
Executive Director
State Purchasing and
    General Services Commission
P. O. Box 13047, Capitol Station
Austin, Texas   78711

Opinion No. JM-381

Re: Construction of House Bill No. 1426, Acts 1985, 69th Leg., ch. 722, which authorizes the state to convey certain real property in Bexar County by a closed bid procedure

Dear Mr. Steen:

You have asked this agency to construe chapter 722, Acts of the Sixty-ninth Legislature, 1985, which was enacted by House Bill No. 1426 to authorize the conveyance of certain state-owned real property in Bexar County. You ask the following specific questions:

1. What is intended and meant by the requirement of a 'closed bid procedure?'

2. Is there a conflict between the provisions of section 1 of chapter 722 and section 3 of chapter 722?

3. What procedure should be followed in selling the property?

It is well settled that the disposition of state-owned land is a matter over which the legislature has exclusive control and the power of an agency of the state to convey state property may be exercised only under the legislature's authorization. See Lorino v. Crawford Packing Co., 175 S.W.2d 410, 414 (Tex. 1943); Conley v. Daughters of the Republic, 156 S.W. 197, 200 (Tex. 1913); Attorney General Opinions JM-149 (1984); MW-62 (1979); C-207 (1964); V-878 (1949). The terms of legislative authorization for the conveyance of land must be strictly complied with. See State v. Easley, 404 S.W.2d 296 (Tex. 1966); Wilson v. County of Calhoun, 489 S.W.2d 393 (Tex. Civ. App. - Corpus Christi 1972, writ ref'd n.r.e.); Attorney General Opinions JM-242 (1984); MW-62 (1979).

In 1981, the legislature authorized the State Purchasing and General Services Commission to lease certain state-owned land in San

Antonio.  Chapter 464, Acts of the Sixty-seventh Legislature, 1981, specifies certain provisions of such a lease, including the right of the lessee to renew the lease for a term not to exceed 25 years at the end of the primary term of the lease.  It authorized the commission to include an "option" for the lessee to purchase the property at the property's fair market value at the time the option is exercised but expressly specifies that such a purchase is subject to the approval of the legislature.  Acts 1981, 67th Leg., ch. 464, §2(c), at 2073. Later that year, the commission leased the property for a primary term of 25 years with the right of the lessee to renew the lease for an additional 25 years.  The lease includes permission to the lessee to cancel the lease after giving notice and contains an "option" to the lessee to purchase the property at the property's fair market value at the time the lessee certifies its intent to purchase, if the legislature approves the purchase.  Prior to the 1985 session of the legislature, the lessee certified its intent to purchase, and House Bill No. 1426 was introduced in that session for the purpose of obtaining the necessary legislative approval.  We conclude, however, that the legislature by the enactment of House Bill No. 1426 did not approve the sale of the property in question to the named lessee at fair market value.  See Acts 1985, 69th Leg., ch. 722, at 5251.

As introduced and as it passed the House, House Bill No. 1426 would have directed the State Purchasing and General Services Commission to convey the property to the named lessee at a price determined by the fair market value of the property on January 1, 1985, which would be established by an MAI appraisal.  As it finally passed the legislature, House Bill No. 1426 authorized a different kind of sale.  Instead of directing the commission to convey the property to the named lessee, House Bill No. 1426 gives the commission the right to convey the property without naming a specific purchaser. As passed, the bill does not provide that "the sale price" of the property will be its fair market value but provides that "the minimum price of the property" will be its fair market value.  The final bill further provides that the sale of the property is subject to a "closed bid procedure."  As finally passed, House Bill No. 1426 provides that a conveyance of the property shall not be in conflict with the terms of a lease that was authorized by chapter 464, Acts 1981, 67th Leg., ch. 464, at 2073.  As introduced, the bill provided that a conveyance under House Bill No. 1426 would be in accordance with the terms of such a lease.

You ask if there is a conflict between sections 1 and 3 of House Bill No. 1426.  We conclude that the provisions do not conflict. Section 1 directs that a conveyance shall not conflict with the terms of the lease authorized by chapter 464, Acts 1981, 67th Leg., ch. 464. Section 3 authorizes the sale of the property under terms and procedures that differ from the terms and procedures in the lessee's so-called option to purchase at fair market value in paragraph III (3) of the lease.  We believe the option in the lease can be more

accurately described as an option to seek the legislature's approval to purchase on those terms. The legislature was not obligated to approve the lessee's offer to purchase at fair market value and did not grant that approval by the enactment of House Bill No. 1426. Instead, the legislature exercised its right to authorize the sale of the property on different terms, which include a bid procedure and fair market value as a minimum price. Since the lessee does not have a right under the lease to purchase without the legislature's approval, a conveyance under the terms approved by the legislature in section 3 would not conflict with the terms of the lease. Under House Bill No. 1426, the commission is authorized to convey all of the interest of the state in the property in question, assuming the property is sold not later than December 10, 1985, and a purchaser would take the title of the state but subject to the lease contract. The named lessee is not precluded from submitting a bid as provided by section 3 of House Bill No. 1426.

You also ask the meaning of "closed bid procedure" and what procedure should be followed in selling the property. It is our opinion that the legislature intends "closed bid procedure" to mean a procedure under which sealed bids to purchase the property are submitted following the publication of notice that the property is available for purchase. Competitive bidding is the method frequently adopted by the legislature for the sale or lease of property. In article 5421c-12, V.T.C.S., which is applicable to land owned by a political subdivision of the state, the legislature specifies that such land may be sold by sealed bids and at a price not less than fair market value after publication of notice that the land is to be offered for sale. Section 4.02 of the State Purchasing and General Services Act authorizes the commission to lease state-owned land under the commission's control for agricultural and commercial purposes on the receipt of bids after advertising a proposed lease. V.T.C.S. art. 601b. Subsection (b) of section 4.02 directs the commission to adopt rules and regulations that will, in its judgment, protect the interest of the state and authorizes the commission to reject any and all bids. Id. Section 4.15 of that act authorizes the commission to lease certain office space in a state-owned building by negotiating with a tenant or by selecting a tenant through a competitive bidding process. Id. In either case, the commission shall follow procedures that promote competition and protect the interests of the state. See id. §§4.15(b), (f). Section 9.05 of the same act directs the commission to sell certain surplus or salvage personal property owned by the state by competitive bid or auction and after publication of notice of the sale if the estimated value exceeds $1,000. V.T.C.S. art. 601b. As to purchases to be made by the State Purchasing and General Services Commission, as distinguished from sales, the legislature has specified that purchases, with certain exceptions, shall be based on competitive sealed bids after publishing notice of the purchases to be made. See id. §§3.10, 3.11, 3.12.

House Bill No. 1426 contains no guidelines for bid procedures and publication requirements to be employed in the sale of this specific property. It is reasonable that the legislature intends the commission to protect the interest of the state, including rejection of any and all bids, in both a lease of state property under its control and in a sale of the property authorized by House Bill No. 1426. In the absence of specific guidelines for this property, we believe the general law guidelines provided by the legislature for the sale of land owned by the state's political subdivisions would constitute reasonable bid procedures and publication requirements for the Bexar County property owned by the state. See V.T.C.S. art. 5421c-12, §§1 and 3.

## SUMMARY

House Bill No. 1426 of the Sixty-ninth Legislature does not grant legislative approval to sell certain Bexar County property owned by the state to the named lessee who offered to purchase the property at fair market value. Legislative authority to sell the property by a bid process does not conflict with a lease provision that permits the lessee to purchase at fair market value if the legislature approves such a purchase. It is the opinion of this agency that the legislature authorized the sale of the property by competitive bidding which would protect the interests of the state, such as the general law provisions for sealed bids and publication of notice of the sale enacted by the legislature for the sale of other publicly-owned property. Any sale will be subject to the leasehold interest in the property.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton
Sarah Woelk