

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

September 3, 1993

Honorable Luis V. Saenz
Cameron County District Attorney
974 East Harrison Street
Brownsville, Texas 78520

Opinion No. DM-246

Re: Whether the County Purchasing Act, sections 262.021 - .035 of the Local Government Code, applies to purchases made with funds generated by forfeitures under chapter 59 of the Code of Criminal Procedure (RQ-378)

Dear Mr. Saenz:

You have requested our opinion regarding the following fact situation:

> The Cameron County Attorney's Office regularly has proceeds awarded to it under Chapter 59 of the Texas Code of Criminal Procedure, which it uses in accordance with the restrictions of Article 59.06 of said Code, specifically for "official purposes" of th[e] office. Occasionally, the County Attorney will purchase items, for official purposes of the office, which exceed $10,000.00 in price. In the instant case, the County Attorney's Office desires to purchase a new phone system for the Office which will exceed $10,000.00 in price. The County Auditor has taken the position that any purchase by a County Department over $10,000.00 must comply with the provisions of the County Purchasing Act, Chapter 262 of the Texas Local Government Code. [Emphasis in original.]

You specifically ask whether the County Purchasing Act applies to purchases made with funds generated by forfeitures under chapter 59 of the Code of Criminal Procedure. We conclude that it does.[1]

The County Purchasing Act (the "act") was enacted in 1985, Acts 1985, 69th Leg., ch. 641, § 1, at 2377 (repealed by Acts 1987, 70th Leg., ch. 49, § 49(1)); V.T.C.S. art. 2368a.5 historical and statutory notes, and was codified in 1987 as subchapter C of chapter 262 of the Local Government Code, Acts 1987, 70th Leg., ch. 149, § 1. The act requires the commissioners court to comply with certain competitive bidding or

---

[1]We assume for the purposes of this opinion that the proposed telephone system is a type of purchase that is not exempt from the requirements of the County Purchasing Act. See Local Gov't Code § 262.024 (exemptions). Accordingly, we do not address in this opinion the scope of the exemptions from the competitive bidding requirements.

competitive proposal requirements "before a county may purchase one or more items under a contract that will require an expenditure exceeding $10,000." Local Gov't Code § 262.023(a).[2]

Chapter 59 of the Code of Criminal Procedure was enacted in 1989. Acts 1989, 71st Leg., 1st C.S., ch. 12, § 1. That chapter provides for the seizure and forfeiture, Code Crim. Proc. art. 59.02(a), of property that is defined as contraband, see id. art. 59.01(2) (definition). All forfeited contraband is "administered by the attorney representing the state," id. art. 59.06(a), that is, the felony prosecutor in the county in which the forfeiture proceeding was held, id. art. 59.01(1). The provisions relevant to the disposition of forfeited contraband are quoted in large part below:

> (a) All forfeited property shall be administered by the attorney representing the state, acting as the agent of the state, in accordance with accepted accounting practices and with the provisions of any local agreement entered into between the attorney representing the state and law enforcement agencies. If a local agreement has not been executed, the property shall be sold on the 75th day after the date of the final judgment of forfeiture at public auction under the direction of the county sheriff, after notice of public auction as provided by law for other sheriff's sales. The proceeds of the sale shall be distributed as follows:
>
> (1) to any interest holder to the extent of the interest holder's nonforfeitable interest; and
>
> (2) the balance, if any, after deductions of all storage and disposal costs, to be deposited not later than the 30th day after the date of the sale in the state treasury to the credit of the general revenue fund.
>
> (b) If a local agreement exists between the attorney representing the state and law enforcement agencies, the attorney representing the state may transfer the property to law enforcement agencies to maintain, repair, use, and operate the property for official purposes if the property is free of any interest of an interest holder. The agency receiving the forfeited property may purchase the interest of an interest holder so that the property can be released for use by the agency. . . .

---

[2] "The competitive bidding or competitive proposal requirements . . . apply only to contracts for which payment will be from current funds or bond funds or through time warrants." Id. § 262.023(b). The act defines current funds to include, among other things, "funds in the county treasury that are available in the current tax year." Id. § 262.022(2).

(c) If a local agreement exists between the attorney representing the state and law enforcement agencies, all money, securities, negotiable instruments, stocks or bonds, or things of value, or proceeds from the sale of those items, shall be deposited according to the terms of the agreement into one or more of the following funds:

(1) a special fund in the county treasury for the benefit of the office of the attorney representing the state, to be used by the attorney solely for the official purposes of this office;

(2) a special fund in the municipal treasury if distributed to a municipal law enforcement agency . . . ;

(3) a special fund in the county treasury if distributed to a county law enforcement agency, to be used solely for law enforcement purposes; or

(4) a special fund in the state law enforcement agency if distributed to a state law enforcement agency . . . .

(d) Proceeds awarded under this chapter to a law enforcement agency or the attorney representing the state may be spent by the agency or the attorney after a budget for the expenditure of the proceeds has been submitted to the commissioners court or governing body of the municipality.

*Id.* art. 59.06; *see id.* art. 59.01(4) (defining *law enforcement agency* as agency of state or political subdivision authorized to employ peace officers).

We understand from your request that the funds in question have been deposited in a special fund in the county treasury pursuant to the above-quoted subsection (c)(1) of article 59.06. You do not assert that forfeiture funds in the county treasury are not county funds, nor do you assert that a purchase of a telephone system for the county attorney's office made by "the attorney representing the state" is not a purchase by the county. The only issue you raise is whether the act has been impliedly repealed with respect to purchases made with county treasury forfeiture funds generated under article 59.06.

You rely on a letter opinion that this office issued in 1988, Letter Opinion No. 88-112, *withdrawn*, Letter Opinion No. 88-114 (1988), *reaff'd*, Letter Opinion No. 89-30 (1989). Letter Opinion No. 88-112 involved the old forfeiture provisions in the Controlled Substances Act, V.T.C.S. art. 4476-15, §§ 5.03 - .10 (repealed by Acts 1989, 71st Leg., ch. 678, § 13(1)).[3] In that letter this office quoted dictum from Attorney

---

[3]Some of the forfeiture provisions of the former Controlled Substances Act have been incorporated into chapter 59 of the Code of Criminal Procedure. Code Crim. Proc. §§ 59.01 - .06, 59.08 historical and statutory notes; *see* Health & Safety Code §§ 481.001 - .205 (provisions of current Texas Controlled Substances Act).

General Opinion JM-783 (1987) suggesting that the act did not apply to those forfeiture provisions because forfeiture funds generated pursuant to those provisions "are administered by the seizing agencies or the office to which they are forfeited." Letter Opinion No. 88-112, at 2-3 (quoting Attorney General Opinion JM-783 at 5). This office then concluded that "the County Purchasing Act d[id] not apply to purchases made with funds generated by forfeiture under section 5.08 of article 4476-15." *Id.* at 3.

You believe that because the forfeiture law commands that "[a]ll forfeited property shall be administered by the attorney representing the state," *id.* art. 59.06(a), the legislature intended to displace the act from purchases made with funds deposited in the county registry pursuant to subsection (c)(1) of article 59.06. We cannot find such an intent in the language you cite. Subsections (a) through (c) of article 59.06 regulate the administration of forfeited property only (1) until such property is sold and the proceeds are distributed to the state, *id.* art. 59.06(a), or (2) until such property or its proceeds are transferred to law enforcement agencies pursuant to a local agreement, *id.* art. 59.06(b) - (c).[4] Subsections (a) through (c) do not deal with purchases made with forfeiture funds. *See id.* art. 59.08(a) (providing for the deposit of money seized as contraband until judgment in forfeiture action).

We believe the pertinent provision addressing the authority of the attorney representing the state or law enforcement agencies to make purchases with forfeiture funds is located, rather, in subsection (d):

> Proceeds awarded under this chapter to a law enforcement agency or to the attorney representing the state *may be spent by the agency or the attorney after a budget for the expenditure of the proceeds has been submitted to the commissioners court or governing body of the municipality.* The budget must be detailed and clearly list and define the categories of expenditures, but may not list details that would endanger the security of an investigation or prosecution. Expenditures are subject to audit provisions established under this article.[5] . . . The head of the agency or attorney

---

[4]Subsection (e) of article 59.05 of the Code of Criminal Procedure provides that when a court finds that property is subject to forfeiture, "the judge shall forfeit the property to the state." Subsection (a) of article 59.06 provides that "[a]ll forfeited property shall be administered by the attorney representing the state, acting as the agent of the state." The administration provided for in subsection (a) lasts only until the forfeited property is sold and the proceeds distributed to interest holders and the state (if there is no "local agreement"), Code Crim. Proc. art. 59.06(a), or "the attorney representing the state property . . . transfer[s]" it to local law-enforcement agencies pursuant to a "local agreement," *id.* art. 59.06(b).

[5]Subsection (g) of article 59.06 provides:

> All law enforcement agencies and attorneys representing the state who receive proceeds or property under this chapter shall account for the receipt and disbursement of all such proceeds and property in an audit, which is to be

> representing the state may not use the existence of an award to increase a salary, expense, or allowance for an employee of the attorney or agency who is budgeted by the commissioners court or governing body unless the commissioners court or governing body first approves the expenditure.

*Id.* art. 59.06(d) (footnote and emphasis added). According to the legislative history of chapter 59,[6] the language of subsection (d) is a compromise between the desire of law enforcement and prosecution agencies to have no "front-end review" of their purchases and the legislators' desire that there be oversight by the commissioner's court or municipal governing body.[7] Subsection (d) requires only the categorical *submission* of a budget of

---

(footnote continued)

> performed annually by the commissioners court or governing body of a municipality, as appropriate. Certified copies of the audit shall be delivered to the attorney general and the governor no later than 30 days after the audit is completed.

[6]House Bill 65 of the 71st Legislature added chapter 59 to the Code of Criminal Procedure. Acts 1989, 71st Leg., 1st C.S., ch. 12, at 14.

[7]The issue the legislators spent the most time on was the extent to which purchase decisions by prosecuting attorneys and law enforcement agencies would be subject to interference by commissioners' courts or other governmental bodies. Russell Hardin, representing the Texas District and County Attorneys Association, testified as follows at the Senate Criminal Justice Committee's public hearing on House Bill 65:

> No one objects to the auditing.... The disagreement seems to be ... on the front-end review of what prosecution is doing versus making sure after the fact that it was done properly.... To lay out our projected law-enforcement activities-- ... I don't believe it's good, sound public policy, in advance.
>
> . . . .
>
> Let's take the smaller jurisdictions. They forfeit, let's say, $10,000. They have a need for an immediate buy-sell operation. They go to the DA now and they say, "I need this money for this thing"; he just turns it over to them. Once you put [the buy-sell operation] in this budgetary operation [(i.e. the budget submitted to the commissioners court)], they are bound into government and not being [sic] able to respond to the exigencies of law enforcement. They become just like any other situation.

Hearing on H.B. 65 Before the Senate Criminal Justice Comm., 71st Leg. (July 18, 1989) (tape recording available from Senate Staff Services). The sponsor of House Bill 65, Senator John Whitmire, made the following remarks at the same hearing:

> [The district attorneys] don't write the bill, but I'm telling you that they do have access to the Governor's Office, and they will work to have the bill vetoed if it has any supervision by a legislative body--being the commissioners court, the city council, or another entity--over the spending and the application of the seized property and the proceeds gained from the sale thereof.... So, I know the will of the Senate and this committee, because we spent long hours over it.... The discussion among the committee during the regular session was just as strong a

proposed forfeiture-fund expenditures; it does not require the governing body's *approval* of the budgeted expenditures, except for increases in "salary, expense, or allowance for" certain employees. *See* Attorney General Opinion DM-72 (1991) at 3 (specification of governing body's role in approving certain items of forfeiture fund budget indicates limitation of governing body's authority to approve forfeiture fund expenditures). Subsection (d) thus grants purchasing authority to the attorney representing the state or the law enforcement agency and generally requires only that the relevant governmental body be kept informed of aggregate expenditures of forfeiture funds (by category) and that the expenditures be subject to audit.[8] *See* Attorney General Opinion DM-247 (1993) at 10-12 (audit requirements for forfeiture funds).

Our review of the legislative history of chapter 59 did not reveal any reference to the act. We also reviewed the legislative history of the act in search of clues on the legislative intent regarding its scope. The immediate statutory predecessor of the current act, article 2368a.5, V.T.C.S. (repealed by Acts 1987, 70th Leg., ch. 149, § 49(1)), was part of the 69th Legislature's comprehensive reform of various, sundry, and often contradictory competitive bidding laws. *See* Acts 1985, 69th Leg., ch. 641 (enacting County Purchasing Act; amending, *inter alia*, former article 2368a, V.T.C.S., the Certificate of Obligation Act of 1971, and the County Road and Bridge Act; and repealing various laws); *see also* 35 D. BROOKS, COUNTY AND SPECIAL DISTRICT LAW § 18.3 (Texas Practice 1989) (summarizing various statutory requirements for competitive bidding). Former article 2368a.5 provided, in part:

> Before a county may purchase one or more items under a contract that will require an expenditure exceeding $5,000, the commissioners court of the county must comply with the competitive bidding or competitive proposal procedures prescribed by this Act.

---

(footnote continued)
> feeling that it be an oversight [by the] legislative body.... They don't want, after the sale of a ... seized and forfeited house, or car, or funds, whatsoever—they want, as they currently do under [the] Controlled Substance [Act]—they have total discretion of what they do to fight crime with that money.

*Id*

[8]In House floor debate on H.B. 65, the undersigned commented as follows on the auditing requirements added by a Senate amendment to the bill:

> [T]he Senate also put on an amendment which would make some relatively significant auditing requirements part of the bill in order that we can keep some sort of handle on the manner in which the prosecutors and the law enforcement and seizing agencies are expending the funds that came out of the forfeitures.

Debate on H.B. 65 on the Floor of the House of Representatives, 71st Leg. (July 18, 1989) (tape recording available from House Committee Coordinator).

V.T.C.S. art. 2368a.5 (repealed by Acts 1987, 70th Leg., ch. 149, § 49(1)). The 70th Legislature codified the act into the Local Government Code. Acts 1987, 70th Leg., ch. 149, § 1. The act now contains the same language as quoted above, except that the "bid trigger" has been increased to $10,000. Local Gov't Code § 262.023.

The language of the act is broad; by its terms it applies to all county purchases exceeding $10,000. It also is significant that the current act omits the language of the old, pre-reform law apparently limiting its application to purchases made by counties when acting through their commissioners courts. The former law read in part:

> No county, *acting through its Commissioners Court*, . . . shall hereafter make any contract calling for or requiring an expenditure or payment in an amount exceeding five thousand dollars ($5,000.00) out of any fund or funds of any . . . county or subdivision of any county . . . without first submitting such proposed contract to competitive bids.

Acts 1981, 67th Leg., ch. 853, § 2, at 3242 (amended by Acts 1985, 69th Leg., ch. 505, § 2; repealed by Acts 1987, 70th Leg., ch. 149, § 49(1)) (emphasis added).

In Attorney General Opinion MW-439 (1982), this office decided that the competitive bidding laws then in effect[9] did not apply to a law[10] that, like chapter 59, created a special fund in the county treasury that was under the administrative control of local officials other than the commissioners court. That decision was based in part on a restrictive phrase ("acting through its Commissioners Court") in one predecessor competitive bidding statute, V.T.C.S. art. 2368a, which language was omitted in the legislation that was enacted as article 2368a.5[11] and is now codified as subchapter C of chapter 262 of the Local Government Code. That opinion also relied on language ("in the judgment of the Commissioners Court") in a competitive bidding law that subsequently was repealed. V.T.C.S. art. 1659a (repealed by Acts 1985, 69th Leg., ch. 641, § 11).

---

[9]Those laws were V.T.C.S. article 2368a, Acts 1981, 67th Leg., ch. 853, § 2 (repealed by Acts 1987, 70th Leg., ch. 149, § 49(1)), and V.T.C.S. article 1659a, Acts 1959, 56th Leg., ch. 105, § 1, at 187 (repealed by Acts 1985, 69th Leg., ch. 641, § 11). Article 2368a at that time contained the language that is quoted in the preceding paragraph in the text. Article 1659a provided in part:

> In all counties having a population of eight hundred thousand . . . or more, . . . supplies of every kind, road and bridge material, or any other material, for the use of said county, or any of its officers, departments, or institutions must be purchased on competitive bids, the contract to be awarded to the party who, in the judgment of the Commissioners Court, has submitted the lowest and best bid.

*Id.*

[10]The law was article 53.08 of the Code of Criminal Procedure (repealed by Acts 1987, 70th Leg., ch. 167, § 4.01(b)). The subject matter of former article 53.08 is now located at article 102.007.

[11]Acts 1985, 69th Leg., ch. 641 (repealed by Acts 1987, 70th Leg., ch. 149, § 49(1)).

Finally, the opinion relied on statutory language granting "sole discretion," Code Crim. Proc. art. 53.08(e) (repealed 1987),[12] to the prosecuting attorney in making expenditures from the special fund. Attorney General Opinion MW-439 at 5. Such strong language does not appear in chapter 59.[13]

Even when former article 2368a, V.T.C.S., contained a phrase apparently restricting the competitive bidding law to actions taken by the commissioners court, we have been reluctant to construe that language strictly. *See* Attorney General Opinion JM-313 (1985) at 3.[14] A broad construction of the competitive bidding laws is more in keeping with their purpose:

> [The] purpose [of competitive bidding] is to stimulate competition, prevent favoritism and secure the best work and materials at the lowest practicable price, for the best interests and benefit of the taxpayers and property owners.

*Sterrett v. Bell*, 240 S.W.2d 516, 520 (Tex. Civ. App.--Dallas 1951, no writ), *quoted with approval in Texas Highway Comm'n v. Texas Ass'n of Steel Importers, Inc.*, 372 S.W.2d 525, 527 (Tex. 1963). Considering the beneficent purpose as well as the broad language

---

[12]Former V.T.C.S. article 53.08, subsection (e), provided in part as follows:

> (e) Fees collected under this article shall be deposited in the county treasury in a special fund to be administered by the county attorney, district attorney, or criminal district attorney. Expenditures from this fund shall be at the sole discretion of the attorney, and may be used only to defray the salaries and expenses of the prosecutor's office.

[13]In Attorney General Opinion JM-313 (1985), this office emphasized that the decision in Attorney General Opinion MW-439 was based in part on the strong language (quoted above in note 11) vesting exclusive discretion in the prosecuting attorney to make purchases out of the hot-check fund. Attorney General Opinion JM-313 at 2-3. In Attorney General Opinion JM-967 (1988) this office noted that the "hot check fund" law and the competitive bidding statutes had been amended but concluded that the amendments did not change our conclusion in Attorney General Opinion MW-439 that "hot check fund" purchases are not subject to competitive bidding requirements. Attorney General Opinion JM-967 at 2.

[14]In Attorney General Opinion JM-313, this office tempered somewhat our analysis, in Attorney General Opinion MW-439, of the restrictive language ("acting through its Commissioners Court") of former article 2368a by making the following clarification:

> We emphasize that [Attorney General Opinion [MW-439] does not indicate that expenditures by a county officer *never* fall within the scope of statutes which contain express references to actions taken by the commissioners court. Because county funds have been traditionally administered and expended by the commissioners court, *the legislature's reference to actions taken by the commissioners court may, in some instances, be intended to cover generally the expenditure and handling of "county funds."*

*Id.* at 3 (emphasis added).

of the act, we would be especially reluctant to conclude that the act was impliedly repealed with respect to purchases made with county treasury forfeiture funds.

The act is readily harmonized with the purchasing authority granted to prosecuting attorneys and law enforcement agencies under article 59.06.[15] The attorney or law enforcement agency generally has authority to decide what prosecutorial or law enforcement purposes to spend forfeiture funds for, but in so doing it must deal with the suppliers selected by the commissioners court through the bidding process provided in the act. Except for salary, expense, or allowance increases for certain employees, the commissioners court has no authority to reject expenditures out of forfeiture funds once those expenditures are submitted in a budget. Attorney General Opinion DM-72 at 3.

We conclude that the act does apply to purchases made out of the special fund in the county treasury for the benefit of the attorney representing the state as provided by article 59.06 of the Code of Criminal Procedure. Accordingly, Letter Opinions Nos. 88-112 and 89-30 should be disregarded to the extent that they would suggest a contrary conclusion.

You have not advanced it, but we anticipate the argument that the act and chapter 59 could not operate together because the commissioners court would interfere with the prosecutor's or law enforcement agency's spending authority. Although the act applies to chapter 59, this does not mean that the commissioners court may second-guess the prosecutor's or law enforcement agency's decision to make a purchase. The commissioners court has a ministerial duty to initiate the competitive bidding process upon receipt of a purchase request from the prosecutor or law enforcement agency. Although the commissioners court has the right to reject all bids, *Corbin v. Collin County Commissioners' Court*, 651 S.W.2d 55, 57 (Tex. App.–Dallas 1983, no writ), it may not do so for the purpose of preventing or delaying a forfeiture-fund purchase.[16]

---

[15]"[If] two laws relate to the same subject, [they] should be considered as if incorporated into one act. If being so considered the two can be harmonized and effect given to each, there can be no [implied] repeal [of the former law]." *Conley v. Daughters of the Republic*, 156 S.W. 197, 199 (1913); 67 TEX. JUR. 3d *Statutes* § 136, at 750-51 (1989).

[16]"[T]he various officials elected by all the voters of the county have spheres that are delegated to them by law and within which the commissioners court may not interfere or usurp." *Avery v. Midland County*, 406 S.W.2d 422, 428 (Tex. 1966). "Even in matters involving some degree of discretion, the commissioners court may not act arbitrarily." *Vondy v. Commissioners Court*, 620 S.W.2d 104, 109 (Tex. 1981) (holding that district court should have granted mandamus sought by constable in petition against county commissioners court to compel it to set reasonable salary). We assume that the commissioners court will not attempt to interfere with the attorney's or law enforcement agency's spending authority by refusing to initiate the competitive bidding process or by pretextually rejecting all bids. If interference were to occur, however, the attorney or law enforcement agency could seek mandamus relief from the courts.

## S U M M A R Y

The County Purchasing Act ("the act"), sections 262.021 - .035 of the Local Government Code, applies to purchases made out of the special fund in the county treasury for the benefit of the office of the attorney representing the state as provided by article 59.06 of the Code of Criminal Procedure. The commissioners court has a ministerial duty to initiate the competitive bidding process upon receipt of a request from the prosecutor or law enforcement agency and may not refuse all bids received for the purpose of preventing an expenditure out of the special fund. Letter Opinions Nos. 88-112 and 89-30 should be disregarded to the extent that they would suggest a contrary conclusion.

Very truly yours,

**DAN MORALES**
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Attorney General for Litigation

RENEA HICKS
State Solicitor

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by James B. Pinson
Assistant Attorney General